UNITED STATES DISTRICT COURT

for the Southern District of Georgia
Savannah Division





Case No.

*(to be filled in by the Clerk's Office)*

Cordelius Brown

*Plaintiff*

-v-

Titlemax of Georgia Inc,

Insurance Auto Auction Of Rincon,

Greg Ludwig,

Steve Thomas

Nathaniel Anderson

Erin Fritts
,
Carley Bragg

Jason Broce

Clay Alexander

Rachel Hudson

Tabitha McCallum

Kelly Cummings

Tracy Young and Doe 1-5

*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)
)
)

**Complaints For Damages (Continuous Violation)**

1. **Discrimination in Violation of Title VII of Civil Rights Act**
   42 U.S.C. § 2000e, et seq.
2. **Title I of ADA** 42 U.S.C. 12112,42 U.S.C. §12203(b), 42 U.S. Code § 12203(a)
3. 42 U.S.C. § 1981;
4. **Retaliation for complaining and opposing unlawful acts**
   Section 704(a) of Title VII,U.S.C. § 2000e-3(a),O.C.G.A. 34-6A-5
5. **Harassment and Hostile Work Environment** Section 703(a) of Title VII, 42U.S.C.2§ 2000e-2(a)3(a)
6. **Disability Retaliation for complaining and opposing unlawful acts**
   O.C.G.A. 34-6A-5
7. **Defamation**
   OCGA§ 51-5-1
8. **Intentional Infliction of Emotional Distress** OCGA § 51-12-4
9. **Intentional Interference with Employment** OCGA § 51-9-l1
10. **Fraud by inducement and deceit**
    O.C.G.A. §51-6-1
11. Wrongful Termination in Violation of Public Policy
12. **Civil Conspiracy**
    O.C.G.A. §16-4-8
13. **Misrepresentation**
    O.C.G.A. § 51-6-2
14. **Negligence**
    O.C.G.A. 51-12-33
15. **Vicarious Liability/Premises Liability**
    O.C.G.A. § 51-3-1, O.C.G.A. §51-2-1
16. **Failure to Grant Due Process**
    42 U.S.C. § 1983)

**Jury Trial Demand**

1

Plaintiff Cordelius "Miss Dear" Brown states and alleges as follows for her Complaint against each Defendant and alleges upon personal knowledge regarding herself and her own acts, and on belief, regarding all matters set forth in this complaint in its entirety

## Introduction

**Plaintiff states, alleges, and incorporates all Paragraphs of this Complaint fully**

1. In January 2014, the Plaintiff was recruited and later hired in February 2014 to begin her employment with Titlemax of Georgia. During the Plaintiff's phone interview with one of TMX recruiters Ms.Allison; she described TMX as being a company offering financial services to meet the needs of consumers, by allowing consumers to use their vehicle titles as collateral to obtain funds to meet their financial needs. Ms.Allison informed the Plaintiff she sent her information to the Human Resource Department however; the senior team would make the final decision to offer employment. The plaintiff Cordelius Brown also known as "Miss Dear " or "Dear" (**not "DEAR BROWN"**) began her employment with Titlemax of Georgia on *February 10, 2014* . She held her Associates Degree in Business Management specializing in Human Resource with several years of experience in the used car industry. The Plaintiff had the experience, character and identity traits, automotive experience and business management experience that the Defendants conspired to use and relied upon with the intent to use against her and the community for their own financial benefit. Later, in the Plaintiff's career the Defendants of Titlemax conspired to have the Plaintiff reassigned to

2

Savannah, Georgia on *February 10, 2020.* The Plaintiff alleges that the Defendant

Titlemax of Georgia has conspired against her entire career from 2014 to 2022.

2.     Titlemax of Georgia is a title pawn lender sometimes referred to as a

"predatory lender" that opened its first establishment in Columbus, GA 1998.  The

Defendants Titlemax of Georgia later established their corporate office in Savannah,

Georgia. The mission statement of Titlemax has changed over the years; however, the

portion of the statement "to provide financial services to those without access to a

traditional line of credit" did not change during the Plaintiff's employment. The

Defendants knew or should have known that in 1998 to the current date that millions

of African Americans, Hispanics and the elderly are the consumers that did not have

access to what is considered a "traditional line of credit."  Most of the TMX

storefronts are in less fortunate communities; giving those who face financial

hardships easy access to their service; sadly a possible debt trap.  Before Titlemax fell

under the radar of CFPB they used misleading selling points, omitted facts about the

product, and unfair collection practices for the advancement of their business.

Unfortunately it appears that more African Americans are employed by Titlemax and

more consumers are also African Americans based on both on the Plaintiffs

experience. Race or color should not be a factor or consideration in making

employment decisions and the reason for selection decisions should be well

supported and based on a person's qualifications for the position according to the

EEOC.

3.    "Mr. Young has the ability to control substantially all matters of significance to the Company, including the strategic direction of our business, the election and removal of the managers of TMX Finance LLC, the appointment and removal of our officers, the approval or rejection of a sale, merger, ....." as stated in the Securities and Exchange Commission Form 10-K for the fiscal year ended December 31, 2011 by TMX. Mr. Tracy Young has held the same title and authority since 2011 and he was made aware of the Plaintiff's employment concerns mentioned in this complaint. Mr. Young chose not to intervene and allowed the top members of his Human Resource Department and directors to subject the plaintiff to more retaliation, discrimination, and harassment after she expressed her concerns. Mr. Young should be required to speak on behalf of his intentional negligence that injured the plaintiff and should be held liable for the conduct of his staff members.

4.    The Defendants here in this case must show how their conduct was not targeted towards the plaintiff and force her to suffer from unlawful acts of , discrimination, retaliation, harassment, and /or negligence by using methods of inducement, fraud, coercion, conspiracy, deceit, defamation, an unfit for duty scheme, intimidation, bullying, and/ or deception. The Defendants and each of them must show that their conduct was not intentional, premeditated, reckless, outrageous, extreme, coerced, unlawful, and done without malice. The Defendant Titlemax failed to prepare the plaintiff for incidents she would face as a general manager such as customers living in fear of repossession, elderly customers on fixed incomes unable to pay late fees, customers with health conditions having to pay Titlemax and then

4

borrow the money back in order to get medicine and other detrimental effects of its product.

     **5.**     A belief is not defamation whether written or spoken. The Plaintiff alleges and believes her life was endangered. She was traumatized by events of her employment at Titlemax of Georgia and still suffers. The plaintiff asks the court to consider, recognize, and apply the continuous violation doctrine to this case .Also, to protect the plaintiff from future threats of sanctions, and legal fees made by the Defendants intended to deter her from seeking relief and advocating for change. TMX attorney has already threatened to take action against the Plaintiff if she files this complaint here at hand. Any action brought forth should have been done already and any brought forth is an act of retaliation.

## What About Us

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

     **6.**     The Plaintiff created a petition calling lawmakers to investigate unethical business practices at Titlemax in efforts to regulate or change the culture embedded in Titlemax that are unlawful and abusive. The Plaintiff has tried so hard to resolve these concerns but she has been unsuccessful. Now, she asks the court to hear her cry. The Plaintiff should not have to live in fear, live with regret, and live with anxiety just to protect the interest of Titlemax of Georgia. The truth cannot be rendered as disparaging but be accepted as an act of courage to advocate for change. "What about Us?" Was presented to the public, in a public way, and should be part of a public

5

debate. The next generation of children should not be subjected to the business practices of Titlemax as alleged: abusive, unethical, deceptive, unfair, and ungodly. All assertions in the petition are facts, real experiences, and should be accepted as truth. Titlemax did retaliate against the Plaintiff for complaining about discrimination, the harm the product is causing African Americans, questioning and opposing unlawful business practices and behavior.

## Nature of Claims

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

7.     This action before this Court is presented in efforts to provide the appropriate relief to the Plaintiff "Pro Se" litigant Cordelius ("Dear, Miss Dear") Brown, to correct a pattern of unlawful practices of the Defendants of Titlemax of Georgia Inc, TMX employees, Insurance Auto Auctions of Rincon Georgia and Doe's 1-5. The Plaintiff was subjected to discriminatory treatment by Titlemax employees who also conspired to use the Plaintiff race as a marketing tool, her color to determine the side of town she would perform her duties as store manager and general manager despite her performance, her gender to suppress her from promotion, and her disability to an atrocious act of an unlawful "unfit for duty" scheme.

8.     The Defendants conspired against the plaintiff when she questioned business practices that appeared to be reckless, unlawful, unethical, and abusive on its

face. The plaintiff believes she was acting within her rights to question the patterns and practices that seem to violate her civil rights and the labor laws presented in this complaint. The plaintiff has worked countless hours on the clock and off the clock that TMX was aware of. She created material to train her assigned staff members, and developed honest and transparent relationships with customers. The Plaintiff strategy seemed to work well for both consumers and TMX however, based on the TMX adverse action against the Plaintiff this practice seemed detrimental and unwanted by TMX. The Plaintiff was reassigned to the worst offices in the region for actually meeting TMX expectations.

      **9.**     The plaintiff also believed The Defendants and each of them subjected the plaintiff to intentional, malicious, unwelcomed, coerced harassment, retaliation, negligence, defamation, intimidation, oppression, and, or unlawful interference of the plaintiff right to work as an at-will employee in the State of Georgia in the United States of America. This action is brought forth in violation of Discrimination in Violation of Title VII of Civil Rights Act of 1964 42 U.S.C. § 2000e, et seq. ,Title I of ADA 42 U.S.C. 12112,42 U.S.C. §12203(b), 42 U.S. Code § 12203(a),42 U.S.C. § 1981;Retaliation for complaining and opposing unlawful acts Section 704(a) of Title VII,U.S.C. § 2000e-3(a),O.C.G.A. 34-6A-5,Harassment and Hostile Work Environment Section 703(a) of Title VII, 42U.S.C.2§ 2000e-2(a)3(a),Disability Retaliation for complaining and opposing unlawful acts O.C.G.A. 34-6A-5,Defamation OCGA§ 51-5-1,Intentional Infliction of Emotional Distress OCGA § 51-12-4, Intentional Interference with Employment OCGA §

51-9-l1,Fraud by inducement O.C.G.A. §51-6-1,Wrongful Termination in Violation

of Public Policy, Civil Conspiracy  O.C.G.A. §16-4-8 Misrepresentation O.C.G.A. §

51-6-2, Negligence O.C.G.A. 51-12-33,Vicarious Liability/Premises Liability

O.C.G.A. § 51-3-1, O.C.G.A. §51-2-1,Failure to Grant Due Process 42 U.S.C. §

1983.

## 10.    <u>Jurisdiction and Venue</u>

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this
Complaint as if fully stated herein.**

**11.**    This Court has jurisdiction over the subject matter and parties pursuant

to 28 U.S.C. § 1331, as this case involves questions of federal law. This Court also

has jurisdiction pursuant to 28 U.S.C. § 1343 because the Plaintiff seeks damages for

violation of her civil rights and constitutional rights.

**12.**    This Court has supplemental jurisdiction over the related state law

claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same

case or controversy under Article III of the United States Constitution. Plaintiff state

law claims share all common operative facts with her federal law claims, and the

parties are identical. Resolving the Plaintiff federal and state claims in a single action

serves the interests of the judicial economy, convenience, consistency, and fairness for

each party.

**13.**    The Venue is proper in, and Defendants are subject to the personal

jurisdiction of this Court because Defendants maintain facilities and operate business

in this District, and all or most of the events giving rise to this action occurred in this

District. 28 U.S.C. § 1391(b). Pursuant to Local Rule 2-1(a), (b), (c), and (d) of this

District. Assignment to the Savannah  Division of this court is proper because most

of the events  leading to the Plaintiff complaint took place in Chatham, County.


## Parties

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

> **14.**   Plaintiff Cordelius "Miss Dear, Dear" Brown, during the relevant times was a resident of Chatham County, State of Georgia.

> **15.**   Plaintiff is informed and believes and thereupon alleges that Defendant "TMX" Titlemax of Georgia, Titlemax Family of Companies Is a Georgia limited liability company whose principal place of business is located 15 Bull Street, Suite 200 Savannah, GA 31406 of Chatham County, Georgia

> **16.**   Plaintiff is informed and believes and thereupon alleges that Defendant "IAA" Insurance Auto Auction of Rincon, Insurance Auto Auction whose place of business is located 348 Commerce Dr, Rincon, GA 31326 of Effingham County, Georgia.

> **17.**   Plaintiff is informed and believes and thereupon alleges that Defendant Tracy Young is an individual and the Chief Executive Officer at Titlemax of Georgia and who resides in the County of Chatham, State of Georgia and at all times was acting as an executive with authority to act on behalf of all other defendants identified in this Complaint.

18.    Plaintiff is informed and believes and thereupon alleges that Jason Broce Human Resource Vice President of TMX as an individual worked at 15 Bull Street, Suite 200 Savannah, GA 31406,  phone number (912) 721-5807 who email address is jason.broce@titlemax.com    at all times was acting  with authority on behalf of himself and  other defendants identified in this complaint.

19.    Plaintiff is informed and believes and thereupon alleges Clay Alexander Senior Human Resource Specialist of TMX as an individual worked at 15 Bull Street, Suite  200 Savannah, GA 31401 whose phone number  is 9127216264, and email address clay.alexander@titlemax.com    at all times was acting  with authority on behalf of himself and other defendants identified in this complaint

20.    Plaintiff is informed and believes and thereupon alleges Erin Fritts a Human Resource Representative as an individual that worked at 15 Bull Street, Suite 200 Savannah, GA 31401 whose phone number is 912-721-5954 and email address is  erin.fritts@titlemax.com  at all times was acting  with authority  on behalf of herself and other defendants identified in this complaint

21.    Plaintiff is informed and believes and thereupon alleges Carley Braggs a Benefit Specialist as an individual that worked at 15 Bull Street, Suite 200 Savannah, GA 31401 whose phone number is 912-721-5954 and email address is carley.braggs@titlemax.com   at all times was acting with authority on behalf of herself and other defendants identified in this complaint.

22.    Plaintiff is informed and believes and thereupon alleges Greg Ludwig District Director of Operations as an individual reported to occupants of 15 Bull

Street, Suite 200 Savannah, GA 31401 whose phone number is 912-961-2423 and email address is greg.ludwig@titlemax.com at all times was acting as an director with authority and acted on behalf of himself as identified in this complaint.

23.    Plaintiff is informed and believes and thereupon alleges Steve Thomas Regional Director of Operations as an individual reported to occupants of 15 Bull Street, Suite 200 Savannah, GA 31401 whose phone number is  912- 346-9882 and email address is steve.thomas@titlemax.com at all times was acting as an director with authority and acted on behalf of himself as identified in this complaint

24.    Plaintiff is informed and believes and thereupon  alleges Nathaniel Anderson Regional Director of Operations as an individual reported to occupants of 15 Bull Street, Suite 200 Savannah, GA 31401 whose email address is nathaniel.anderson@titlemax.com at all times was acting as an director with authority and acted on behalf of himself as identified in this complaint

25.    Plaintiff is informed and believes and thereupon alleges Kelly Cummings Store Manager  as Store Manager of Titlebucks as an individual reported to occupants of 15 Bull Street, Suite 200 Savannah, GA 31401 last work location known is  5150 Augusta Road, Garden City, GA whose phone number is 912-631-5182 and email address is kelly.cummings@titlemax.com at all times was acting as an employee of TMX  and acted on behalf of herself as identified in this complaint.

26.    Plaintiff is informed and believes and thereupon alleges  Rachel Hudson Store Manager  of Titlebucks as an individual reported to occupants of 15 Bull Street, Suite 200 Savannah, GA 31401 last work location known 1976 E Victory Dr,

Savannah, GA 31404 whose phone number is 912-631-2595 and email address is rachel.hudson@titlemax.com at all times was acting as an employee of TMX and acted on behalf of herself as identified in this Complaint

27.     Plaintiff is informed and believes and thereupon alleges Tabitha McCallum General Manager of Titlebucks, as an individual reported to occupants of 15 Bull Street, Suite 200 Savannah, GA 31401 and work last work location known 1976 E Victory Dr, Savannah, GA 31404 whose phone number is 912-245-6846 and email address is tabitha.mccullam@titlemax.com at all times was acting as an employee of TMX and acted on behalf of herself as identified in this Complaint

28.     Plaintiff is unaware of the true names and capacities of those defendants sued as Defendants DOES 1 through 5, and seek to sue Defendants by such fictitious names.

29.     Plaintiff believes and alleges that each of the Defendants as DOE, was and is legally, equitably, or in some other actionable manner, responsible for the events that happened during her employment by intentionally, neglecting their duties because of direct or imputed negligence or vicarious fault or breach of duty arising out of the matters alleged, therefore have legally and proximately caused the alleged injuries and damages to the Plaintiff.

30.     Each Defendant is the agent, servant and/or employee of the other Defendant Tracy Young, and Each Defendant was acting within the course and scope of his, her or its authority as an agent, servant, and/or employee of the other Defendant.  Defendants and each of them, are individuals, corporations, partnerships

and other entities which engaged in, joined in and conspired with the other

wrongdoers

31.     Defendants and each of them are individuals, corporations, partnerships

and other entities which engaged in, joined in and conspired with the other

wrongdoers in carrying out the tortious and unlawful activities described in this

complaint, and Defendants, and each of them, ratified the acts of the other Defendants

as described in this Complaint. Plaintiff will seek to amend this Complaint once the

true names and identities of the unknown named DOE Defendants when they are

revealed. Each of the individual Defendants sued is being sued both in their official

capacity, and their individual personal capacity.

### ***Administrative Procedures***

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this
Complaint as if fully stated herein.**

32.     Prior to the filing of this Complaint, Plaintiff filed a charge of

discrimination with the Equal Employment Opportunity Commission ("EEOC"),

alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

et seq("Title VII")American with Disability Act. Plaintiff's EEOC charge arises out of

many of the same facts alleged herein that pertain to her Section 1981 retaliation

claim. Many of the same facts alleged herein pertains to her defamation, fraud by

inducement, wrongful termination, vicarious, premises liability, misrepresentation,

intentional infliction of emotional distress, negligence, interference with employment

by third party, and conspiracy led to and or derived out of violation of all of the Plaintiff's civil and constitutional rights mentioned in this complaint.

33.    The Plaintiff made requests to meet with TMX officials many times in effort to resolve her concerns. The request was ignored each time therefore TMX did not make any attempts to resolve any concerns mentioned in this complaint but continued to subject the Plaintiff to unlawful conduct with the intent to cause harm. The Defendants mentioned in this were part of a gang. TMX employees in prominent positions are an organized group of lawbreakers and should be investigated. The Plaintiff has obtained the Right to Sue Notice from EEOC.

**Facts in Dispute**

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

a.    The position statement the Defendant TMX provided to EEOC is filled with misinformation, omission of facts, nonfactual allegations from employees that did not work with the plaintiff, and defamation. The defendants should be required to explain their assertion and provide evidence that is not "hearsay" to support their position, and also reveal the names of each witness through discovery. The Plaintiff disputes each and every assertion TMX made to EEOC.

b.    The Defendants made statements about the Plaintiff's performance in Savannah when records show the offices were underperforming before the plaintiff was reassigned to District 1 of Titlemax of Georgia Inc. The Plaintiff

can NOT be held liable for $xxxxxx of bad debt that was a result of Greg's negligence from 2019 when the Plaintiff was reassigned in 2020 and no employee can be credited for the work of the Plaintiff when it's was the Plaintiff who worked countless hours to correct the performance issues and delivered results while working at TMX#2 of Savannah and TB#1 of Garden City on the clock and off the clock.

      c.      TMX position statement is not based on facts and is a bad faith argument. The position statement is based on LIES, in efforts to stereotype the Plaintiff because she is an African American female. The Plaintiff believes and alleges that TMX position only revealed the culture of the business as being polluted with Unethical, **Deceptive, Misleading, and Corrupt.**

      d.      The Plaintiff's life was endangered and TMX must take accountability for their actions. The Plaintiff will demand a public written and video recorded apology.

### *Factual Allegations*

### *As Store Manager in Columbus, Georgia*

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

    **34.**    November 2017 Plaintiff alleges that she was working as the assistant store manager of Titlemax # 1. Then she was promoted to a store manager position and reassigned to work at Titlemax #5 of Columbus, GA under the leadership of M. King (Caucasian male). M King's performance was not meeting performance metrics

prior to the Plaintiff becoming part of his team. By the end of the Plaintiff first month at Titlemax # 5 she had a significant impact on the performance of the office. When Frank Chilsom became the District Director and Steve Thomas the Regional Director for the Columbus, GA market things changed drastically for the plaintiff. The conspired and intentional acts of discrimination, retaliation and harassment were frequent without any regard for the plaintiff. The Plaintiff's consistently delivered results month after month. Eventually TMX #5 of Columbus, GA was named the number 1 office in May 2018 in the district and or region.[1]

35. July 2018 Plaintiff alleges that Frank Chilsom reassigned her back to Titlemax #1 of Columbus, GA, to work alongside H. McBride (District Director, Caucasian male). Prior to the plaintiff going back to Titlemax #1 of Columbus, GA, the staff of 5 was not meeting expectations and struggled to do so. Frank stated that H. McBride needed to have a good month as the leader of Titlemax # 1 in order to be assigned to a District. Frank Chisholm removed T. King (Caucasian male, general manager) from the office and informed the Plaintiff of the office performance goals of $ xxx,xxx of new revenue and $xx,xxx in recovery. Titlemax failed to promote the African American male T. Howard (light skinned, African American male) to a store manager position. The plaintiff later requested T. Howard for the store manager position under her leadership when she was promoted to General Manager. H. McBride was assigned a district the following month because the team of TMX#1 exceeded expectations. T. King was reassign back to TMX#1 and the team

---

[1] TMX#1 and TMX#5 of Columbus, GA are located on the side of town that has the highest earning potential with more Caucasian consumers. Throughout the months Frank would have private conversations with the plaintiff about her work and wanted to know how the Plaintiff remained consistent.

continued to exceed expectations while the Plaintiff was the store manager at the location month after month; eventually growing the location to $x,xxx,xxx in total accounts by  October or November of 2018.

**The Business License Scandal**
**Columbus, Georgia**

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

36.    Plaintiff alleges that in late January 2019, Frank Chilsom reached out to her and informed her that she was being promoted to the General Manager position. On or Around Feb 3, 2019 the Plaintiff was promoted to a General Manager position without training and reassigned to TMX#3 of Columbus, GA.; to a facility that held questionable business licenses. The landlord and several officials met at the premises on the Plaintiff's first day. They held a meeting standing up next to the Plaintiff desk while the Plaintiff was sitting. One of the attendees reminded the landlord that he was aware that the facility would be demolished. The State of Georgia intended to demolish the facility and reconstruct Exit 3 off I-185. It was brought to the Plaintiff's attention that the business license was not updated and had expired in 2017. Plaintiff spoke with Frank Chilsom and he stated he would inform Steve Thomas. The meetings continued throughout the year of 2019. In March 2019 Plaintiff alleges that T. Howard (light skinned ,African American male) was promoted and worked alongside her as the store manager of TMX# 3 May and June 2019 Plaintiff alleges

that her team was acknowledged for both months as being the number one office in the district and/or Region by Frank Chilsom.

37.    August 2019 Plaintiff alleges that Frank Chilsom decided to remove T. Howard from under her leadership without notice. He was assigned to work with T. Hill the new general manager reassigned to (light skinned, African American female) TMX #1 of Columbus, GA. The Plaintiff was not informed that she would need to prepare to work alone. The Plaintiff had to work many days 10 to 12 hours without any assistance, lunch breaks and/or off days for the month. The plaintiff opposed this action and spoke with Frank Chilsom.  Around September 3 2019, Frank Chilsom hired K.Smith as the new store manager (Caucasian female) to work under the Plaintiff's leadership at Titlemax #3. September 6, 2019 the Plaintiff alleges that the landlord Paul Olson visited the facility and informed the plaintiff that Titlemax was aware that the facility was going to be demolished and needed to speak with someone immediately. Mr. Olson called the police and left the premises. The Plaintiff forwarded Mr. Olson contact information to Frank Chilsom.

38.    In October 2019 Plaintiff alleges that she interviewed A.Burton (Caucasian female) at TMX# 3 of Columbus not knowing that she was interviewing an individual would later be under her leadership at TMX #5. The Plaintiff was temporarily reassigned back to TMX#5 of Columbus by Frank to manage and to discover the performance issue. Frank stated that L. Dennis (brown skinned, African American female) performance would need to improve so she could later be promoted to General Manager after the blackout period. Frank Chilsom interviewed

B. Williams (African American male) at TMX# 5 and conspired to have B. Williams as the Plaintiff new store manager when she returned to TMX #3. The Plaintiff returned to TMX# 3 around the last week of October 2019. On November 6, 2019 the Plaintiff and her staff arrived before the opening of business; so did B. Williams and Frank Chilsom. Again the Plaintiff was not made aware of any changes being made with staffing .Frank Chilsom removed K. Smith from under her management and sent her to work at TMX #1 with T. Hill. Frank and the Plaintiff had a conversation about excluding her from discussion about the staffing and using her performance to reassign employees to bigger offices for the second time. Frank Chilsom apologized and begged the Plaintiff not to quit. The Plaintiff was crying, disappointed, and unable to perform her duties. She requested to leave for the day. November 21, 2019 Plaintiff alleges that McGee Strickland (Caucasian female, District Director) completed a cross audit at TMX # 3 and she also questioned the business license at the location. Plaintiff contacted Frank Chilsom regarding the audit and the business license. Frank expressed that some things were out of his control.

    **39.**    Early December 2019 Plaintiff alleges that B. Williams was removed from the office. Frank instructed the Plaintiff how to complete B. William's evaluation so he could transfer him to a Titlebucks office. The plaintiff worked days alone and many without lunch breaks or off days again until December 31st. R. Hayes (Caucasian female) started working as the new store manager at TMX#3 of Columbus, GA.

**40.**     Around December 14, 2019 the Plaintiff realized that she was the only general manager in the district and or region that had outstanding numbers for the entire year. The Plaintiff felt bad about her performance and had a heavy heart seeing how the reports made her stick out like a sore thumb. She recommended procedure changes that label employees as targets. The Plaintiff alleges that she stated to Frank Chilsom "This is a performance -based company. How does the manager encourage their team when the reports keep showing them how bad they are doing? The numbers speak for themselves so target max only adds insult to injury. The damage is there in red but why does everyone need to see that someone's office is a target...A target for what?? Replacements. Improvement...What's the logic behind it?"

**41.**     A few days later the Plaintiff called Frank Chilsom and informed him that someone came into the office and stated that the Plaintiff would be personally responsible for conducting business without proper license and the city would give her documents to appear in court. Frank was made aware of the visit and he stated there was nothing he could do but inform Steve. On December 21, 2019 the Plaintiff alleges that Frank Chilsom texted the team stating "Columbus team, if somebody from the city comes by about your business license please email me what they give you. Corporate is working on it. Thanks!" January 9, 2020 Plaintiff alleges that Frank Chilsom sent a text stating "Good morning! Everybody got an email from Ashley Cantrell last night at 6 about some docs we have to fill out for our business license. The Plaintiff alleges that she signed documents for the business license. Business licenses were issued to TMX #3 in March 2020 for the year 2018 and 2019

for transfer from the now demolished building formerly located at 3707 Buena Vista Road to the current location of TMX #3 of Columbus, Georgia.

42.    Under the leadership of Frank Chilsom and Steve Thomas the plaintiff requested to be demoted to an assistant store manager position to relieve herself of the unlawful and possible illegal practices as alleged and described. With Human Resource aiding and abetting Frank and Steve in the conspiracy the plaintiff was faced with and suffered from a pattern of unlawful discrimination, retaliation, and harassment. All parties committed, engaged, and or supported acts of intentional conspiracy, coercion, deceit, misrepresentation, and abuse. The Plaintiff was not a trainer and did not complete General Manager Training, yet she consistently delivered results. The Plaintiff had managed 8 employees (5 African Americans, 3 Caucasians) (3 males and 5 females); she was transferred 3 times, interviewed 3 females that soon became employees of TMX; she was acknowledged 3 times as the top office, and her work was used to evaluate other employees 3 times (2 Caucasians and 1 light skinned African American) (2 males, 1 female) that were all placed in the better side of town with higher earning potentials. It's not coincidental that the Plaintiff started her career February 10, 2014 and ended her career February 10, 2020 in the Columbus Georgia market at TMX #3 which was located on the side of town with the lesser earning potential.

43.    Other similar situated general managers were treated more favorably than the plaintiff because the Plaintiff is a dark skinned African American female. The plaintiff's skin color was the determining factor when Steve and Frank denied her the

opportunity to work as general manager on the better side of town with higher

earning potentials. Yet, she was able to work under the management of 2 Caucasian

males as store manager on the better side of town even though it was the Plaintiff

work that improved the performance and operation of each entity. However, TMX #

3 was in good standing because the plaintiff had set the standard and culture for the

office by developing honest and transparent relationships with her customers that

were previously misled. And she consistently rewarded her team and invested in her

team's growth while in leadership. The plaintiff developed her own business

strategies without help from the directors and her own procedures that were 100%

effective. From 2017 to 2020 the Plaintiff has generated well over $x,xxx,xxxx in

revenue and profit. Plaintiff generated over $xxx,xxx in profit in an office that

generated $xx,xxx the 2 years previous years combined at TMX#3. The Defendants

actions were reckless, unlawful, intentional, and abusive.


## *"The Reassignment Scandal"*
## *Savannah, Georgia*

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this
Complaint as if fully stated herein.**

44.     February 9, 2020. Plaintiff alleges that she was contacted after leaving

church service on a Sunday by Steve Thomas. Steve informed the Plaintiff that she

would be needed for 2 weeks in the Savannah area. She was instructed to report to

Titlemax #2 of Savannah on February 10, 2020. Steve Thomas said that he would

inform Rich Stacy, and other executives that the Plaintiff agreed to work in the Savannah market for two weeks. The Defendant of Titlemax did not think enough of the Plaintiff to set up any hotel arrangements for the Plaintiff as she traveled overnight to Savannah GA. The Plaintiff arrived between 4 and 5 a.m. on February 10, 2020. The Plaintiff reported to TMX#2 of Savannah as instructed at the start of business. She met with Steve Thomas and Greg Ludwig at the start of business. This meeting was the first time the Plaintiff met Greg Ludwig who stated that the Plaintiff would have to get a lawn mower to cut the grass. The Plaintiff asked Steve about the business license in Columbus and he stated it was taken care of .Steve Thomas and Greg Ludwig conspired to fraudulent induce the plaintiff to agree to being placed in Titlemax #2 Savannah by promising plaintiff to make a lot of money in the Savannah market, insinuating that the company was working on a relocation package that was allegedly the same as  the DDO relocation package, and the plaintiff would be promoted to a District Director of Operations position.

**45.**     February 12, 2020 Plaintiff alleges that she received the relocation package and Titlemax reimburse her around $5,000 toward her relocation expenses which was included as wages earned on her check stubs. TMX changed the Plaintiff's check stubs for several months to show her hourly rate being around $17.00 per hour which they knew was false information.[2] Neither Greg nor Steve provided the Plaintiff with an overview of the office at no point. She later discovered that she was placed in the worst office in the region. The Plaintiff believed she had the option to

---

[2] Five thousand dollars is not enough money for someone to leave their whole life behind only to be placed in the worst office in the region. The Plaintiff was a top performer and delivered results.

turn down the offer, however she did not. She was already replaced by Anna (Caucasian female) in Columbus, Georgia on February 10, 2020; the same day the Plaintiff was conspired and coerced into traveling to Savannah, Georgia. The Plaintiff completely relied upon the promise of becoming a district director by Greg Ludwig and Steve Thomas. Shortly after the Plaintiff was reassigned to the Savannah market, a month or so later the Defendant TMX reconstructed the district by eliminating one of the district director positions after terminating Frank Chilsom and then dividing the offices between remaining district directors who are all Caucasians. Mr. Mike became the District Director for the Columbus Market and Greg was assigned 10 more offices to oversee. TMX did not close any establishments in either district that would justify the elimination of the district director position. By reconstructing the district the defendants denied qualified African Americans the opportunity to become district director of operations but tremendously increased the earning for the District Director; while the General Manager pay changed throughout the year at the discretion of the company.

46.    M. Walker was the store manager of TMX#2 of Savannah during the relevant time. She suggested to the Plaintiff to ask Greg Ludwig the reason she had to come to Savannah so suddenly overnight. The Plaintiff had a conversation with M. Walker. M. Walker expressed concerns relating to workplace abuse and being misled by TMX. The Plaintiff could not understand how 50% of customers were delinquent on their accounts and the unexplainable growth in total accounts. Greg Ludwig was harassing M. Walker through emails about wanting her to color a TMX

document each night.  M. Walker cried hysterically and quit a couple of days later.

Plaintiff observed M. Walker's engagement with the customer and it was clear that she

was misinformed about the product. Greg was made aware of the hostile environment

at TMX#2 because of his behavior and the concerns that were expressed by M.

Walker.  The Plaintiff was placed in the worst office in the Region on a distinct side

of town in the less fortunate community despite her performance. She still was not

allowed to perform her duties at locations that had more Caucasian consumers on the

better side of town. Many of the customers of TMX#2 of Savannah believed they

were selling their vehicles and actually called the office and asked the Plaintiff how

much TMX would pay to buy their vehicles. The Plaintiff was in complete shock but

continued to build rapport with customers in effort to correct the performance issue of

TMX#2 of Savannah. Surprisingly, the Plaintiff was warned by the customers that

TMX would replace her in a few months. They would often refer to the office as the

revolving door, just as customers did at TMX#3 of Columbus.

    **47.**    On or around February 24, 2020 the Plaintiff alleges that she asked Greg

why she was needed in Savannah overnight so suddenly. He expressed that Otto

(during the relevant time the President of TMX) made a surprise visit to the office on

February 8, 2020. By this time, the Plaintiff discovered the performance issue and

projected it would be seven months to turn the office around. There was a sudden

and enormous growth in accounts prior to the Plaintiff being reassigned to the

Savannah market but 50% of the customers were delinquent. Greg  was conducting

an audit;  this would be the only time Greg would complete an audit the entire time

the Plaintiff managed TMX#2 of Savannah in her presence. The Plaintiff asked Greg questions about the unexplainable growth, if TMX was telling customers that they are buying cars, and why was IAA involved with customer's accounts? The Plaintiff asked for the agreement with IAA and Greg stated he did not have it. Greg seemed upset with the Plaintiff as she tried to understand what was going on in the office. It appeared that Greg did not like being questioned but the Plaintiff needed to understand how the office was being managed. From that moment Greg seemed determined to abuse the plaintiff, his authority, and did so moving forward. The Plaintiff managed two new employees of TMX while being the lead manager in the office. There was no consideration or regards for the newest team in the district and Greg's intimidating and harassing conduct became reckless.

    **48.**    The Plaintiff found herself in tears while speaking to Greg as early as March 2020. In March 2020, Greg seemed to have a personal issue with Joselle Garcia (Hispanic female, Store Manager) and he asked the Plaintiff to start keeping record of Joselle with the intent to terminate her. The Plaintiff expressed to Greg that she would not do that because she believes Joselle was a great employee and the request was unprofessional. As the general manager with a heart of compassion and cheerleader for all of her staff members, the Plaintiff found herself constantly defending her staff member to Greg often because he constantly harassed her about Joselle. In May 2020 Greg achieved his goal and terminated Joselle. The Plaintiff requested a demotion instead of termination of Joselle; however Greg stated that the Plaintiff can't save Joselle and in his district he does not demote employees. The

Plaintiff began documenting Greg's behavior because his behavior was not what any employee would expect from a supervisor in a prominent position. He behaved like his employees were his personal property without any rights, he did not care about violating laws, he lacked compassion and respect for employees, nor did he did not mind sharing employees personal information and did not perform his job; otherwise the corruption of TMX #2 would not have happened. The Plaintiff soon realized Human Resource of TMX aided, abetted, and condoned Greg's unlawful and unprofessional conduct. It was the culture of TMX.

49. Greg would maliciously, recklessly, intentionally, and frequently behave in a manner that was abusive, retaliatory, discriminatory, unlawful, and unjust. He was so determined to make the Plaintiff feel uncomfortable he advised the entire district to be like the Plaintiff while calling her Dear Brown. The Plaintiff informed Greg that she found "Dear Brown to be a bit racist and to reframe for referring to her as that. He continued sending emails referring to the Plaintiff as Dear Brown but would refer to her as Dear during private conversation.[3] India expressed to the Plaintiff that other General Managers were asking who the Plaintiff was because Greg continuously mentioned the Plaintiff in emails in effort to make other General Managers feel that they were not doing the best they could. For instance, Greg informed his district that the Plaintiff returned to work around 8 to 9 o'clock at night to accommodate a customer who was in need of financial assistance but she was a nurse and could not come in during normal business hours. He started referring to the

---

[3] Greg would make the Plaintiff order her staff to enter the ceiling to search for dead animals, and work in an office taken over by millions of big jumbo flies. Climb ladders to remove from the light fixtures which had been there before the Plaintiff was even transferred to Savannah. This complaint does not list all of Greg's reckless conduct as an attempt to keep this complaint short.

27

Plaintiff as the override queen to the district instead of just using the Plaintiff drive

for success to encourage his teams to use the tactics to go above and beyond for each

customer.

   **50.**   On or around June 22 2020 Plaintiff alleges that Greg informed T.

Welch the store manager (previous assistant store manager that was terminated April

2020) of TMX#2 of Savannah (Caucasian male) that he was reassigning him to

TMX#1 of Savannah and not to mention it to the Plaintiff. The same conspiracy that

Frank and Steve committed in Columbus, GA was being committed by Greg and

Steve in Savannah. Ted was relocated July 2020 to work on the better side of town

that has more Caucasian customers and a higher earning potential. He would be

placed under the leadership of G. Martinez (light skinned Hispanic male).The

plaintiff was informed she would get a new employee by Greg about one week

before her start date. Again, the Plaintiff had to beg for lunch breaks and a day off.

   **51.**   On July 20, 2020 The Plaintiff alleges that she contacted the Human

Resource Department of TMX because she was being treated unfairly. She had

worked a month alone, only given about a week of lunch breaks and no off day. The

Plaintiff was advised that she would have to wait until July 24, 2020 for a day off.

The Plaintiff was advised she could be relieved for a day off on July 24, 2020. The

following day, July 21, 2020 C. Hayes (light brown skinned, African American

female) started her employment with TMX. Greg visited the office the following day

to drop off a key and reassured the Plaintiff she could have July 24, 2020 off. Well,

the Plaintiff did not have July 24, 2020 off because Greg allowed Tabitha M.

(Caucasian female) the day off knowing that he allowed her the week of July fourth off.

52. On August 5, 2020 Plaintiff alleges that for the second time since being in Savannah, Greg visited the office while the Plaintiff was not in the office to search for something he could use to justify conduct of intentional retaliation and workplace abuse. The first time it was as early as March after hours during the time the Plaintiff had two brand new employees. This particular time was on the plaintiff's off day; ironically about 16 days after the plaintiff contacted the Human Resource Department about not having an off day for a month. C. Hayes was the new store manager and she informed the Plaintiff that Greg and Steve were at the office, asking her questions. The Plaintiff arrived at the office and Greg asked to meet with the Plaintiff immediately and gave her a sheet of paper that he wrote down 25 things he found wrong with the office that were untrue and petty. Noticeably, at the top of the page he wrote C. Hayes' name for the GMIT program which would have required her to be transferred to another office because the Plaintiff was not a trainer. To make matters worse, Greg and Steve visited the office again the following day and made the Plaintiff carry sandbags as if she was a bodybuilder and watched her struggle. After the Plaintiff completed the task Greg made arrangements for other female general managers to have a male employee to assist them. Being that C.Hayes was still new she was not able to assist the Plaintiff with any of the customer concerns, complete pawn transactions, or answer questions relating to the business. The office was really busy as Greg witnessed the Plaintiff taking the lead to address the customer concerns.

29

By 1 p.m. the Plaintiff completed roughly 75 to 100 calls, completed 2 pawn transactions, completed the bank deposit, and took several payments. Greg knew that the Plaintiff could not neglect the needs of customers and the daily duties that were mandatory to complete before a certain time each day. As soon as Greg saw that the Plaintiff was free, he came to her desk and asked her if she was defying him and told her to clock out and go home and not to come back unless she sent him an email. Greg then went to the back of the room and removed the Plaintiff schedule from the wall in front of Steve. Steve smirked but did not say a word

53.    On August 7, 2020 Greg contacted the Plaintiff through email stating that he told her not to return to work and he had not received the requested correspondence. He copied Steve in the email.  Plaintiff responded to Greg's email stating that she left the office not knowing if she had a job or not, she did not understand what she was sent home for, she was lost for words, and someone removed the schedule from the wall and more. Later that day, Plaintiff reached out to Greg for support regarding an error made by C. Hayes; however he ignored the plaintiff and did not respond to the plaintiff for the entire weekend. On August 10, 2020 Greg called the plaintiff and asked her if she was dumb, then called her a dummy. He stated that Steve and Rich Stacey consider the plaintiff the dummy of the region and Steve told him to write the plaintiff up for sending the email with the wrong response. On August 11, 2020 the Plaintiff reached out for advice from an attorney and a District Director (who asked to remain anonymous) from another state because the Plaintiff did not know what to do. Both individuals advised the plaintiff

to contact Human Resource; so she did the day before signing the write up. The information Greg submitted to Clay Alexander were items he held the Plaintiff responsible for on her off day such as: bow flags not being placed outside, trash on the ground, and a morning report. On or around August 16, 2020 the Plaintiff called Human Resource about the write up and informed them that Greg's actions were untrue and retaliatory because the Plaintiff requested an off day through the HR department on July 20, 2020. Plaintiff expressed to the representative that she did not understand what the write up was for, the information was untrue, and this was the first time in the Plaintiff's career she had ever been written up. The Plaintiff was told that she had to sign the write up but it would be removed from her profile in 6 months.[4]

54.    September 3, 2020 the plaintiff alleges that Greg sent her a text message of a potential customer. Tabitha M. (Caucasian, female General Manager of Titlebucks Victory Drive Savannah) was working with the customer earlier that day or the previous day at Titlebucks # 2 of Savannah. She was unsuccessful at closing the pawn; Greg contacted the Plaintiff. A teachable moment for Tabitha M. to go above and beyond for all of her potential customers regardless of race, Greg used the moment to intentionally use the Plaintiff race as the motivating factor when he directed the Plaintiff to contact the same African American customer. The Plaintiff successfully closed the pawn and asked Greg why Tabitha M. was not able to do the

---

[4] On August 29,2020 the Plaintiff messaged Greg about accusations he made about C. Hayes which she had denied and the intentional abuse and misuse of the TMX app intended to entice consumers to bury themselves in further debt.. Greg said he would have a meeting and he never attempted to clear up the false statements he had made. TMX still made the same assertion in their position statement. C. Hayes has still denied the accusation one year later in September 2021.

same thing? Greg stated he did not know and to move on.  On September 21, 2020 the Plaintiff alleges that Greg called C.Hayes and advised her that she was going to go to another office to provide relief for a day off for another general manager. Again Greg communicated with the plaintiff's subordinate without making her aware. During the relevant time the plaintiff's store manager was giving daily lunch breaks for Tabitha M. to provide the relief she was entitled to. Once C. Hayes made the Plaintiff aware of Greg's call; the Plaintiff contacted Greg and expressed to him that she would like to be treated fair and she would like to be included in conversations about the staffing. The Plaintiff made Greg aware that C. Hayes TMX#2 of Savannah was providing Tabitha M relief every day. Greg hung the phone up while the Plaintiff was talking.

**55.**    The following day the Plaintiff contacted Human Resource and spoke with Clay Alexander about Greg's disrespectful and unprofessional behavior. The plaintiff also mentioned issues that created a hostile work environment and having to work in fear because of Greg's conduct. Clay stated Greg will reach out to resolve all outstanding matters. Clay was made aware that Greg never reached out. On September 26, 2020 the Plaintiff informed Clay Alexander of Human Resource that she was afraid of Greg Ludwig again by way of email and that Greg still had not reached out. Clay alleged he conducted an investigation while attempting to use a screen shot of the Plaintiff's current complaint to justify the behavior of Greg's previous acts.[5]  The plaintiff corrected Clay about the misinformation he asserted in

---

[5] Speaking with Clay turned out to be the biggest MISTAKE the Plaintiff ever made as an employee of TMX.  His behavior became reckless and malicious. Clay always left the Plaintiff in suspense; wondering what he would say or do next.

his email. Rather than addressing the Plaintiff's concerns, on September 30, 2020,

Greg Ludwig sent a text message to the district stating "Hey before the month ends I

just wanted to say "Thank you to Rachel for stepping up and taking on a very

difficult temp assignment.  A broken store in a bit of a tailspin. The reports don't

always tell the whole story but the truth is she worked her tail off and has the store

and team back to where they can succeed going forward in the immediate

future.Sav3 is going to have a big October based on the momentum she built. Thank

you and thanks to Tabitha for stepping up to hold it down without ever once

complaining about coverage. She just made it work for the team! And grew 9%

herself.👏". The Plaintiff felt that Greg intentionally tried to create animosity between

the plaintiff all black female office and the all Caucasian female office of Titlebucks.

He praised Rachel for not meeting performance measures and taking huge losses and

Tabitha for not complaining about coverage. Greg was well aware that the Plaintiff

had completely balanced and turned around TMX#2 Savannah due to an

unexplainable growth from his previous team while being bullied, harassed, made

mockery of, discriminated against, retaliated against, and treated less favorably. He

also was aware of the Plaintiff's team ensured Tabitha she had relief.

    56.    As Greg made no attempts to resolve the concerns of workplace abuse;

he also neglected his duty to ensure that the Plaintiff and the other African American

female worked in a safe facility. The plaintiff made countless reports, sent many

photos, and many calls about the suspicious activities at TMX#2 the entire month of

September. Greg never visited the site to check out the premises. The plaintiff

reported needles found on the ground, bricks being thrown at the building, the entire commercial dumpster emptied in the parking lot, and hearing people talking behind the building as she did her daily activities and more. The Plaintiff became depressed and overwhelmed with the constant abuse of Greg Ludwig. The Plaintiff reached out to another general manager in a different district for guidance on requesting a FMLA leave of absence.

### *"God's Hedge of Protection"*
### *Ephesians 6:13–17 (NKJV):*

*(13) Therefore take up the whole armor of God, that you may be able to withstand in the evil day, and having done all, to stand. (14) Stand therefore, having girded your waist with truth, having put on the breastplate of righteousness, (15) and having shod your feet with the preparation of the gospel of peace; (16) above all, taking the shield of faith with which you will be able to quench all the fiery darts of the wicked one. (17) And take the helmet of salvation, and the sword of the Spirit, which is the word of God:*


57.    On October 6, 2020 the Plaintiff was faced with a traumatizing event that changed her life.  The Plaintiff exercised her rights to take a leave of absence under FMLA.  TMX received notice of the protected activity via email sent to Human Resource, Greg Ludwig, and Steve Thomas. The email included an attachment of documents from an FMLA source that listed the plaintiff's disability, and details of the incident that led to the leave of absence that day. Also inserted in the body of the email were photos of the parties that jumped out the back of an

unmarked white van located at the rear of the premises. The individuals spit on the plaintiff, threw a chair at the plaintiff, attempted to stab the plaintiff with a needle, and run her over. Plaintiff believed that the parties were attempting to physically harm her and or abduct her for an unknown reason.  On October 7, 2020 Erin Fritts of Human Resource directed the Plaintiff to send her a personal email detailing the incident of the previous day although every staff member of Human Resource received the notice described above.[6]  October 8, 2020, strangely Rachel H.  wanted to find out the event of October 6, 2020 as if she was investigating the incident. Rachel H. (Caucasian, female) the store manager of Titlebucks #2 Savannah stated "U don't know why ur not at work really!! !!! " U going to tell me what happened?? Why didn't u tell me when u text me for Tabatha phone #? I'm not going to tell anybody!!!!!" The Plaintiff was released to return to work on November 2, 2020 by her medical provider and Titlemax received the notice around October 16, 2020.

    **58.**    On November 2, 2020 the Plaintiff alleges that TMX did not allow the plaintiff to return to work after she was released by her medical provider. The plaintiff was told by Greg Ludwig and Steve Thomas to leave the premises and to contact Human Resource. Clay Alexander of Human Resource contacted the Plaintiff and informed her that TMX wanted to ensure the facility was safe and equipped with cameras before she returned to work; she would be placed on a paid administrative leave. The Plaintiff informed Clay that she was made aware that Greg Ludwig denied the store manager C.Hayes a day off and that her early day should be considered her

---

[6] The notice Erin received is the only notice mentioned to EEOC by TMX. TMX completely omitted details of the notice from October 6, 2020 that clearly made Greg, Steve and the entire HR department aware of plaintiff disability and the incident that had occurred on TMX premises. TMX also alleged that they reviewed cameras and did not capture the incident and they were unable to pull footage. Well, there were no cameras on the exterior of the building and Greg stated September 3, 2020 "we need cameras". At no point were cameras installed between September 3, 2020 to October 6, 2020. The Plaintiff would have had to sign for the service.

off day. Clay Alexander was informed that C. Hayes the former employee had concerns of feeling like working on a plantation and being treated like a slave. The plaintiff went further to discuss in great detail her concerns about being discriminated against, retaliated against, disrespected, harassed, neglected, and constantly being treated differently from Caucasian and light skinned employees by Steve Thomas and Greg Ludwig. She informed Clay for the 3rd time that Greg never reached out to resolve any of the issues pertaining to her complaint in September. The Plaintiff was off of work for 4 months without any documentation while under the impression TMX was installing cameras.

### *"The Unfit for Duty Scandal"*

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

59.     On or around February 8, 2021 Plaintiff alleges that Clay Alexander contacted her and asked her what she wanted to do as far as work. Plaintiff stated she was ready to return to work and she expressed to him that she would like to have lunch breaks and off days. The Plaintiff asked Clay if the company addressed the concerns she brought forth regarding discrimination, retaliation, harassment, bullying, and abuse. He ignored the question and rushed off the phone. The following day Carley Bragg (Benefits Specialist) contacted the Plaintiff alleging that the Plaintiff medical provider ignored her for 4 months and she believed it was due to the holidays. The Plaintiff asked Carley Bragg for the dates and time she attempted to make contact with the Plaintiff's medical provider; Carley did not provide any of the

requested information.  The plaintiff reached out to her medical provider and she informed the Plaintiff that TMX has not attempted to contact her at no point but she would call Ms. Braggs. The Plaintiff continued to communicate with Carley Bragg and her medical provider for several days. On February 18, 2020 Carley Bragg sent documents to the Plaintiff's medical provider without making the Plaintiff aware that she was doing so. When the Plaintiff went to her next appointment; she was provided with the documents that C. Bragg sent.

*60.*    On March 16, 2021 Plaintiff alleges that Clay contacted her again and instructed her to contact Greg and Steve to get the day she would return to work. The Plaintiff contacted Greg and Steve, as instructed by Clay to get her return date to work. Greg Ludwig called the Plaintiff stating that he or Steve Thomas was not aware that the Plaintiff was returning to work, so therefore there were not any arrangements made but he would speak with Steve and figure things out.[7] On March 17, 2021 Greg Ludwig contacted the Plaintiff and directed her to report to Titlebucks#1 of Garden City and  the office was in good standings. He went on to state that he discussed with Tabitha, Rachel, and another employee the health of the Plaintiff while she was out on FMLA. Greg stated that only Tabitha and Rachel shared information with him then expressed that he did not know the Plaintiff felt the way she did. Plaintiff asked why would Rachel and Tabitha talk to him about her,Greg said he went to them while the Plaintiff was on FMLA then he rushed off the phone and sent a YouTube video to the Plaintiff. On March 18, 2021 the Plaintiff

---

[7] Plaintiff shared the conversation with Rachel. On March 17, 2021 Rachel stated, "That's so weird right? I doubt u would go back to TM2 because of issues there ``"Sooooo nice chatting with you again!!!!!!"

reported to Titlebucks Garden City, GA where she would perform her duties as general manager. Plaintiff was placed in an office that was not similarly situated to the office she was working in prior to her leave of absence under FMLA. Defendants did not provide the plaintiff any reason why she was being relocated to a less profitable office located 25 to 30 minutes away in another, less fortunate area. Plaintiff was placed in the worst performing office in the region for the second time after performing well while the TMX conspired to replace her with Caucasian females. The plaintiff was forced to work in a hostile work environment created by the TMX knowingly and willingly using the Plaintiff race as the motivating factor to target African American on a certain side of town to improve performance which led to financial gains for themselves.

**61.**    It was evident that the Plaintiff was not going to be promoted to District Director. The Plaintiff was forced to work under pressure to prove she was an asset to the company and just as worthy as Caucasian and light skinned employees. Plaintiff was still coded for Administrative Leave and did not have access to the system, Human Resources advised the Plaintiff that Greg knew that the Plaintiff should not have been working while coded for administrative leave and it would take 2 weeks to change the plaintiff status. This same office was failing and ranked the lowest performing office 1 year prior in February 2020 when plaintiff was fraudulently induced to relocate to Savannah as mentioned above. Ashley Jones (Caucasian female) was appointed as the new general manager of TMX #2 Savannah March 2021. The Plaintiff spent many hours providing extraordinary services while

working under the conditions that created a hostile environment that made her feel

unworthy, and less than all similarly situated employees that were males, Caucasians,

and African American that were lighter than her color. TMX had no regard for the

Plaintiff when she was forced to watch report after report showcasing Ashley ranked

#1 for slow file ranking while she ranked last place in the region. The same exact

disregard when the Plaintiff was replaced by Anna in the Columbus market.

     **62.**    On March 26, 2021 Plaintiff alleges that she contacted Human Resource

with concerns of the office, the reason she was off of work for 4 months, and placed

in an office that was the worst in the district.  Clay contacted the Plaintiff around

March 29, 2021 to address the Plaintiff's concern. Clay informed the Plaintiff that she

was off of work because the Plaintiff's medical provider recommended it. The

Plaintiff informed Clay that she was not aware of the recommendation and requested

the documents. Clay then stated the Plaintiff was off for an investigation. The

Plaintiff asked when anyone was going to inform her she was being investigated and

if the investigation was the reason she was placed in the worst office in the region.

Clay stated because of the company's needs is the reason the Plaintiff was reassigned.

Plaintiff alleges that she also asked Greg why he placed her in the Garden City office

and if the incident on October 6, 2020 had something to do with her being placed in

the worst office in the region. TMX is a performance-based company; the decision

maker(s) disregarded the Plaintiff performance and placed her in an office on a certain

side of town. The Plaintiff contacted Tracy Young (CEO) and Otto Bliess (President

at the time) regarding her concerns. Jason called the same day. Then around April 7,

2021 Jason Broce contacted the Plaintiff and Jason started off misleading the Plaintiff and tried to force her to accept being discriminated against and misled about the allegation made against her medical provider.  The Plaintiff contacted EEOC and spoke with a representative who instructed the Plaintiff to set up the initial intake interview which she scheduled for June 17, 2021.[8]  The Defendants of TMX harassed, humiliated, and made mockery of the Plaintiff. TMX bullied and conspired against the Plaintiff until her last day of employment. The conduct and behavior of the Defendants was CONSTANT, reckless, premeditated, malicious, intentional, and unlawful. It was so awful the Plaintiff felt gang up against, powerless, alone, fearful, cornered, and worthless; she was in disbelief and requested a demotion to Assistant Store Manager Position. Clay and Jason had complete disregard of the Plaintiff as a human being. Greg's behavior was supported and justified by the Human Resource Department because one of them was aiding and abetting at all times.

**63.**    The Plaintiff alleges both offices she managed in the Savannah was ranked #1 plaintiff (Garden City) and #2 (TMX#2 of Savannah) for slow files. Rachel the Plaintiff's subordinate suddenly felt empowered to continue making unwelcome comments to the Plaintiff such as the text on April 2, 2021; Rachel H. stated "Yes ma'am, u better put some glasses on and read that fine print!!!!!!" "Mighty funny u got the time to answer my text fast NOW lmao!!!" and Oohhhhh u at the Motel getting a quickie" On or around April 6, 2021 Plaintiff alleges that she made

---

[8]  If the defendants allege that the plaintiff was failing, then the reports should show that Ashley Jones received a failing office. Otherwise the defendants must admit that the only reason the numbers from October 2021 and moving forward is a direct result of the plaintiff's hard work that Ashley Jones was acknowledged for. She did not walk into a broken office.

Rachel aware of the conversation she had with Greg on March 17, 2021 and Rachel became upset. Rachel stated she would call, however; she never called. Rachel did not speak with the plaintiff again until April 16, 2021 and that is when she disclosed the Plaintiffs schedule to the entire District without her permission and confirming that TMX are working office employees without lunch breaks and off days. The Plaintiff alleges that Greg Ludwig was made aware through email that the plaintiff asked for a demotion and informed him that she refused to be bullied, discriminated against, and retaliated against for the needs of the company.  The Plaintiff was faced with many concerning customers that were faced with a dilemma to choose between their title pawn and their quality of life. The Plaintiff was never informed that there would be moments in her career she would have to lift up customers and place them in their vehicle. Every customer that was facing health issues or struggled to maintain their accounts were African Americans, this was concerning to the Plaintiff. Customers were calling in before surgery just to make payments because they feared repossession, coming into the office crying, while others just simply gave up. Again the Plaintiff had to build relationships with transparency because the customers were misled about the services TMX provided. There is one performance metric that TMX does not discuss which has a direct impact on the consumers but depreciates the value of the business overall.  Therefore customers are not being encouraged to pay off their accounts.

   **64.**    The month of April was so **AWFUL** month but the true culture embedded in TMX was revealed.  April 16, 2021 Plaintiff sent an email to Greg

requesting for an adjustment for expense because TMX knowingly and willingly paid Kelly Cummings (Caucasian, female) for the work the plaintiff had done. Kelly had not worked a single day in the office. Greg forwarded the Plaintiff request to someone else. The request was ignored. April 17, 2021 Clay reached out to the Plaintiff about the email she had sent regarding the slow file. She shared with Clay that she sent an email with good intent and at least one person called her for advice. April 21, 2021   Greg Ludwig sent a subliminal email to humiliate and to make mockery of the Plaintiff. Greg sent the slow file report and he flipped it upside down to show the Plaintiff office at the bottom of the district. In his email he wrote "Savannah 3 has sole possession of first place. Oh never mind it's upside down. The Plaintiff slow file was ranked # 1.  April 22, 2021 at 9:50 a.m. The Plaintiff received an anonymous phone call from Clay Alexander that was answered and transferred by Kelly Cummings from work station number 2 to work station number 1. Clay identified himself as Clay from Human Resource to Kelly.  Kelly got the Plaintiff's attention and stated "Clay from Human Resource is on the phone for you.  It's strange that someone from Human Resource is calling from an anonymous number." During the conversation with Clay Alexander, he tried to convince the Plaintiff to quit.  He stated he sent the plaintiff an email a few days prior and he wanted to follow up." During the conversation Clay made statements like, why won't you just quit. If you don't like your job just quit. You said you are unhappy with my decisions and you should just quit. The Plaintiff  defended herself and informed Clay that his behavior was unprofessional. Clay knew that the Plaintiff never had a conversation

with him or anyone else about not liking her job. Then the Plaintiff responded to

Clay's after speaking with him. The plaintiff called EEOC and was directed to

continue to keep records until the initial interview. The Plaintiff's also responded to

the email Clay sent that he referenced during the phone call. Plaintiff spent her lunch

break crying. April 26, 2021 Plaintiff alleges that she reached out to Otto Bliess (at

the relevant time President of TMX) and Tracy Young (CEO) again.  Jason called

and emailed the plaintiff a few days later calling the Plaintiff a liar, offering her

$xxxxxxxxx to quit after discussing the business license issue, the customers hurting

from the product and  Steve intentionally misleading the plaintiff. Jason continued

trying to force the Plaintiff to accept being discriminated against and saying things

that were very hurtful to the Plaintiff. Tracy Young was made aware of the reckless

behavior of his HR employees after being bullied, disrespected, and retaliated against;

while human resources representatives sent emails that were different from phone

conversations.

    **65.**    On or April 27th 2021 Jason Broce acknowledged the Plaintiff declined

all offers made by the company. Then he asked what additional resolution the

plaintiff was seeking as if he did not offer the plaintiff $xxxxxxxx which she

declined. The plaintiff stated an amount of around $xxxxxxxx in efforts to give back

to the communities. $xxxxxxxxxxx  was not enough to establish 1 group home for

the children at the border, 1 group home for the homeless people and 1 learning

center in 18 states but it was enough to establish the organizations in Columbus, GA

(where Titlemax started its business) and Savannah, GA (where Titlemax established

its corporate office. Then Jason asked the Plaintiff if she wanted the company to pay her $xxxxxxxxxx again knowing that nowhere in the plaintiff email she requested the same amount he presented a few days before. Jason was very condescending, threatening, and abusive. Jason was the main person pretending to care, investigate, and resolve the plaintiff's concerns knowing he was doing things that intentionally created a hostile work environment.

66.    A reasonable person would not expect a group of professionals to behave the way Jason and Clay behaved. It was truly unbelievable. Jason only talked to the Plaintiff to see what her concerns were and then used the information to cover up everybody's wrong doings. For example when the Plaintiff mentioned Otto's name and the concerns of the community. A week later Otto was no longer with the company and Tracy Young sent his first notice to the company emphasizing something about helping communities. When she mentioned Steve, he was transferred to Tennessee. When she mentioned the promise of a District Director position the company started discussing area manager positions. When she mentioned that Jason was stressing her out, TMX sent out mental health training the next day. When the Plaintiff mentioned Greg not completing audits with the Plaintiff like he did for lighter skinned or Caucasian employees Greg enters the office with a lighter skin General manager whose performance was not as good as the Plaintiff; yet she was used to intimidate and further make the Plaintiff feel less than. Niya completed the audit of the Plaintiff's and Greg was using an African American female to do his dirty work. There is no justification for someone in the same position as the

Plaintiff, who was not performing as well as the Plaintiff to do the job Greg was being paid to do nor was it a common practice.

**67.**     No matter how much the Plaintiff asked to be left alone the behavior continued. On or around May 5, 2021 Plaintiff alleges that she reached out to Human Resource for guidance to get her concerns addressed with honesty and transparency because it was apparent that Jason and Clay took the Plaintiff concerns as a joke. Jason Broce stated he was the top official and there was not anyone else who could assist the plaintiff. Plaintiff informed Jason Broce that she contacted EEOC for further assistance. On or Around May 12, 2021 Greg Ludwig visited the Plaintiff work location while she was out on PTO and deleted the Plaintiff information from the computer. For the second time in Savannah, the Plaintiff information was deleted from the computer and could not be retrieved and TMX was notified to reserve documents by a federal agency.  On May 20, 2021 Plaintiff alleges that she requested to review her personnel file with Greg Ludwig who forwarded the request to Human Resource. The next day Human Resource refused the request and instructed her to review Ultipro. Ultipro only had the Plaintiff contact information and no documents uploaded. TMX suggested the plaintiff speak with her medical provider regarding her concerns. Plaintiff asked why she was misled by the Human Resource department about the administrative leave. Plaintiff asked for a conference call with her medical provider and Human Resource to clear up the misunderstanding. The Defendant did not respond to the request. The Plaintiff made

many requests to meet in person because it was difficult for her to see while typing due to an eye condition.

**68.**    May 24, 2021 Plaintiff alleges that Alexandria Tropea (Defendant's Counsel) and Jason Broce contacted the plaintiff due to her protected activity. Alexandria Tropea the plaintiff that state she was diagnosed as suicidal and a threat to herself by the associates of Human Resource and that was the honest reason she was off of work for 4 months. Alexandria expresses while on FMLA the Plaintiffs visited employees, and that said something to Rachel and Tabitha that made the company diagnosis her as suicidal. That information was reported by Greg Ludwig while the Plaintiff was on FMLA. The Plaintiff expressed to Alexandria Tropea that she did not recall visiting Rachel and Tabitha and she did not have a friendship with them. The Plaintiff requested the days of such incidents. Alexandria avoided the question and advised the Plaintiff that she could not speak with an attorney about the information she revealed and if the Plaintiff did she would no longer be able to speak with her. The Plaintiff was in total shock and humiliated. If the Defendant's believed the Plaintiff was suicidal TMX did not think enough of the Plaintiff life to try to save it. For three months the Plaintiff was misled, bullied, harassed, threatened, belittled, retaliated, discriminated and conspired against.  TMX conduct and Tracy Young negligence left the Plaintiff wondering the true intention of reassigning her to District 1 of TMX. After hearing Alexandria Tropea make such a statement the Plaintiff gave up on trying to resolve her concerns however; the abuse by the Defendants mentioned in the complaint continued.

**69.**    June 1, 2021 Plaintiff alleges that Steve Thomas was relocated to the Tennessee market after the Plaintiff made Jason Broce aware of Steve unlawful and reckless behavior. To cover up the wrong doings of Steve, Greg and Human Resource, Titlemax brought Nathaniel Anderson to the District as the Regional Director several days later, and used him to aid and abet in unlawful activities against the Plaintiff. Each person in Human Resource, the owner Tracy Young, Greg Ludwig, and Erin Fritts were 100% aware of the Plaintiff's protected activity and were also aware that Kelly Cumming violated company policy.

### *"The Final Blow"*

**70.**    June 4, 2021 Plaintiff alleges that she emailed Greg Ludwig about a notice she received regarding FMLA. Records show that Greg Ludwig forwarded the Plaintiff email to Clay Alexander less than one hour of receiving the email.  Clay Alexander then forwarded the notice to Carley Bragg. Carley Bragg responded to the plaintiffs concerns around 2:30. Around 4:30pm on June 4, 2021 Greg Ludwig texted the Plaintiff and informed her that he was on PTO and would address her concerns when he returned.  June 7, 2021 Plaintiff alleges that Kelly Cummings sent an email to have a vehicle removed from the premises. She sent the email/ copied to a Titlemax of Alabama, Greg Ludwig and the office email. Kelly failed to follow protocol and violated the TMX policy.  June 8, 2021 Plaintiff alleges that Greg Ludwig sent the Plaintiff email regarding FMLA concerns to the entire benefit department knowing that he had already reached out to Human Resource to address the Plaintiff concerns. Plaintiff requested that Greg Ludwig stop forwarding her

personal concerns to an entire department when he is aware that there is an assigned associate to address the individual concerns of employees regarding FMLA. She requested that Greg inform her who to contact and she would follow up with the representative. The Plaintiff thought Erin was the representative and mentioned her name in the email. Human Resource Responded and defended Greg's actions. Plaintiff suggested a meeting in person. For the third time Plaintiff alleges that she sent an email to Tracy Young (the owner) and made him aware that his Human Resource department integrity had been compromised and some of the representative's conduct did not line up with the company core values.

71.    June 9, 2021 Plaintiff alleges that the Defendant disabled her ability to send emails. Jason Broce was made aware that the company disabled the plaintiff's ability to send an email from the company's assigned email address. Jason Broce sent the plaintiff an email at the time threatening to terminate the plaintiff for reaching out to Tracy Young (CEO) regarding the integrity of the human resource representatives. The Plaintiff had contacted an office in Alabama and had an employee send a test email to see if her ability to send email was restricted also. Plaintiff received an email but she was not able to reply.  TMX and IAA had a vehicle removed from the premises illegally. Kelly was off of work. The owner of the vehicle was sitting in the office of her business as her vehicle was being wrongfully repossessed.  The vendor that removed the vehicle did not follow the repossession law of Georgia by reporting the repossession to law enforcement or verifying the VIN number. Once the plaintiff was made aware of the error she immediately worked to resolve the issue to have the

vehicle returned.  IAA refused to release the vehicle. IAA did not return it either.

Plaintiff responded to Jason Broce and Alexandria's email from her personal email.

She made Jason Aware that she believed he was engaging in cover up to protect the

unlawful activities of the executives and ask to be left alone again.

**72.**     June 10, 2021 Plaintiff alleges that she continued to work to have the

vehicle return. TMX enabled the Plaintiff's ability to send emails again. Kelly

Cummings returned to work. Plaintiff left early that day because of her health. The

vehicle was returned.  Jason Broce had finally honored the plaintiffs request to be left

alone and he sent a recommendation for a wellness program.  Greg communicated

with Kelly Cummings about the wrongful repossession that took place and requested

photos of the vehicle. He did not ask the plaintiff anything about the incident as the

leading manager in the office. The Plaintiff informed.  Kelly Cummings spoke with

law enforcement and gave him false information. Kelly and Greg communicated with

each other and no one spoke to the Plaintiff.

**73.**     June 11, 2021 Plaintiff alleges that the Defendants forced the plaintiff to

work the entire day knowing their intention was to terminate the plaintiff. Around

4:45 p.m. Erin Fritts and Greg Ludwig entered the office in Garden City, Ga.  Erin

Fritts stated "I found a reason to terminate you and I don't care about any

conversation you had with Jason. You are responsible for all errors of white

employees. You got that!" Greg stated, "Yea, you got that!"  Greg pulled out

termination papers, with the plaintiff's social security number from his black bag and

escorted the plaintiff off of the premises. Erin was the HR representative and she

neglected her duties just to showcase her privilege and superiority over the Plaintiff. Because of Erin, the Plaintiff lost her desire to have children.

## *"TMX Position as Written"*

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

74.     TMX has now alleged that employees were in fear for their life after TMX realized the Plaintiff was serious when EEOC requested a position statement. TMX knowingly and willingly submitted false information and should be sanctioned for giving false information to a federal agency and their attorney should be barred from representing TMX in the future, and also sanctioned.

75.     Each and every person working in the Human Resource Department, Benefit Department, Greg Ludwig and the CEO was aware of the Plaintiff's protected activity, so her termination and the person TMX listed as the deciding official is part of the continuation of scandals, schemes, and or conspiracies.

76.     TMX cannot justify any corrective action because they were retaliatory. One write up was for items Greg expected the Plaintiff to do her off day. TMX will need to show how the Plaintiff was supposed to perform morning duties if she was not at work and it was her off day.

77.     The other write up was when the store manager shut off the alarm 1 minute late. Even if the Plaintiff arrived late, writing her up was still an act of retaliation. TMX cannot justify 1 day late in 6 years of employment that should warrant a write up.

**78.**    Furthermore, it is impossible to work for Titlemax without deviating from the schedule. Schedules were not enforced but they were in place just to determine who would be opening and closing the offices each day. Also TMX will have to justify the countless hours the Plaintiff was in the office after close of business and sometimes on Sundays just to complete her daily task on and off the clock. TMX was aware of the Plaintiff working off the clock and did not write her up; therefore she should not be liable for the store manager deactivating the alarm off 1 minute late. It's not a coincidence that the Plaintiff was written up after opposing racial discriminatory practices. The evidence will show the Plaintiff was written up 2 times in 2 consecutive months by Greg Ludwig after opposing discriminatory practices.

**79.**    The Plaintiff called HR in July and was written up in August and September. In July the Plaintiff contacted HR about being denied an off day after working an entire month without relief while Caucasian employees were given several off days throughout the month of July. About 16 days later Greg visited the office on the Plaintiff's off day to search for something he could use to justify his motive of retaliation.

**80.**    September Greg secretly sent the Plaintiff a text message of an African American potential customer that a Caucasian employee was working with in another office; however she was unable to get the potential customer to accept the offer to close the pawn. Greg ordered the Plaintiff to call the customer and she was able to close the pawn. The Plaintiff asked Greg if he didn't mind refraining from texting her

phone numbers of African American potential customers that were doing business with Caucasian employees at other locations because she did not want to assume he made the decision because she was African American like the customer. She expressed that it made her feel uncomfortable. The Plaintiff asked why the Caucasian employee was not able to do the same thing. Greg said he did not know and to move on. The Plaintiff was written about 16 days later.

81.     TMX has alleged that S. Benton is still employed with the company and to speak with their attorney regarding any question for an investigation. However, the Plaintiff has a statement from the same person stating she was working at the location TMX alleged the Plaintiff worked at in 2020 in Garden City. S. Benton stated she was terminated November 2020 several days after requesting a FMLA leave of absence by TMX.[9]

82.     TMX has alleged that the Plaintiff engaged customers in sheer pajamas insinuating that she wore clothing that would have revealed her underwear and or private parts. The Plaintiff does not dress in revealing clothes nor does she own such attire.

83.     TMX listed employees that never worked with the Plaintiff at any point or in the same building in their statement such as Tabitha, Susanne, India and others. TMX will not be able to prove this assertion, but they instructed the EEOC to contact their attorney if they wanted to talk to the employees.

---

[9] TMX informed EEOC false information knowing the Plaintiff worked in Savannah, GA 2020 and then Garden City 2021 however TMX asserted that the Plaintiff was working in Garden City 2020 knowing they cannot prove the assertion.

84.     The Plaintiff asks the court to sanction both TMX and their attorney if they are unable to provide evidence to support their assertions to deter them from purposely lying to a federal agency. The Plaintiff knows that TMX will not be able to produce any statements from any employee that would have made anyone live in fear unless the 1 employee that worked with the Plaintiff made that statement and she has denied doing so.

## First Claim for Relief
## Discrimination on the Basis of Disability violation of Title I of the ADA 42 U.S. Code § 12112 (Titlemax of Georgia)

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

Congress findings under 42 U.S. Code § 12101 states "(1)physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society…(2)historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities….(3)discrimination against individuals with disabilities persists in such critical areas as employment….(5)individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion,......"

85.     The Plaintiff was diagnosed with diabetes October 2017. She later suffered from severe anxiety, depression, and insomnia in 2020 as a result of TMX employee's unlawful acts.

86.     The Plaintiff was a qualified employee that was able to perform the essential functions of her duties without a request for reasonable accommodations. The Defendant acts of retaliation, harassment, intimidation, bullying and negligence created a hostile work environment for the Plaintiff before and after she requested a leave of absence under FMLA. The Plaintiff suffering from anxiety, depression, and insomnia is a direct result of TMX intentional infliction of emotional distress.

87.     Greg Ludwig questioned, discussed, and /or disclosed the Plaintiff medical conditions with employees who did not work with the Plaintiff; violating 42 U.S. Code § 1320d–6 while Plaintiff was out on FMLA.

88.     The Defendants outright subjected the Plaintiff to unwelcome conduct by placing her on an administrative leave for four months under the impression that cameras were being placed at the facility, removing plaintiff from office when she returned to work, then placing her in the worst office in the region. TMX employees insinuated that the Plaintiff medical provider misled her; TMX diagnosed her as suicidal, and a threat to herself without making anyone aware of the alleged concerns. TMX did not speak with the Plaintiff's medical provider, did not review the Plaintiff medical history, did not provide any documents for the administrative leave, and did not address their concerns at any point prior to the Plaintiff questioning and opposing acts of discriminatory disability retaliation and the reason she was off of work.

89.     She was misled, made mockery of, humiliated, discriminated against on the basis of her disability and retaliated against for taking an FMLA leave of absence.

The Defendant TMX used the Plaintiff's disability as framework to further commit acts that were unlawful and intentional acts of discrimination.

      a.     This conduct was severe, pervasive, intentional, demoralizing, unjust, reckless, malicious and unlawful.

      b.     Plaintiff made multiple complaints to Defendants' Human Resource associates (who aided and abetted) in the unfit for duty scheme, harassment, retaliation, discrimination, intimidation and other unlawful acts.

      c.     Management level employees and Human Resource associates knew, or should have known; that their actions of conspiracy to label the plaintiff unfit for duty was unlawful. The Plaintiff complaints should have warranted a thorough investigation but Human Resources was not going to investigate themselves, so Tracy Young as the CEO was made aware of the conduct and neglected his duty to protect the Plaintiff.

      d.     A reasonable person with a disability in the Plaintiff's position would have found the work environment to be hostile, polluted, and lacking integrity on the basis of disability discrimination

      e.     As a result of the severe and pervasive conduct by the Defendants in violations of Title I of the American Disability Act, Plaintiff have suffered and still suffers damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life,

humiliation, emotional distress, reputational harm, in addition; the plaintiff experienced nightmares and fear of leaving her home.

f.      The Defendant's action created a hostile work environment for Plaintiff on the basis of disability discrimination.

g.      Plaintiff found her work environment to be hostile and charged with disability discrimination.

h.      The Defendants' unlawful actions were intentional, willful, malicious, and/or done with a reckless disregard of the Plaintiff right to be free from discrimination on the basis of disability.

i.      Titlemax discriminated against the plaintiff on the basis of disability in violation of Title I of the ADA 42 U.S. Code § 12112, Ga. Code § 34-6A-4.

j.      The Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.


### *Second Claim for Relief*
### *Interference, Coercion, and Intimidation Violation of Title I of ADA 42 U.S.C. §12203b (Titlemax of Georgia, Greg Ludwig, Carley Braggs, Clay Alexander, Steve Thomas)*

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

The 42 U.S. Code § 12203-b states, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted..."The Plaintiff believes that this rule applies to TMX employees too.

90.     The Plaintiff engaged in protected activity under ADA by exercising her rights to take a leave of absence under FMLA. The Defendant received notice of the protected activity via email addressed to Human Resource, Greg Ludwig and Steve Thomas on Oct 6, 2020. TMX retaliated against the Plaintiff on the basis of her disability in violation of 42 U.S.C. §12203b

91.     The Defendants subjected the Plaintiff to unwelcome, intentional, malicious, and retaliatory acts by forcing her to manage an office that was not similarly situated to Titlemax #2 Savannah, to drive to another city that is a further distance to perform her duties, forced her on an administrative leave for four months under the impression that cameras were being placed at the facility at TMX#2 of Savannah to ensure the premises is equipped with the proper security devices, conspired to remove the Plaintiff from office after she did all the hard work in, and then placed her in the worst and smallest office in the region. She was forced to work harder in an office that was less desirable and lower earning potential.

92.   The defendants used the plaintiff disability as framework to further engage in a pattern of more unlawful and intentional discriminatory practices and to justify retaliatory discrimination on the basis of the Plaintiff's disability.

93.   This conduct was severe and pervasive, intentional, malicious, reckless, and outrageous. The Plaintiff complaints were ignored by the Defendants' Human Resource associates and the owner of the business himself. The Defendants' actions created a hostile work environment for the Plaintiff because of her disability. The Defendants transferred the Plaintiff a less desirable office, abused their authority, and threatened to terminate the plaintiff for questioning and opposing unlawful conduct. TMX started  false rumors about the plaintiff,  insinuated that she was misled by her medical provider,  and TMX diagnosed the Plaintiff in secret as suicidal without making anyone aware of the alleged concerns or conducting a true investigation.

94.   The Plaintiff found her work environment to be hostile and charged with disability discrimination and suffered more harm from the retaliatory acts of the Defendant.

   a.   A reasonable person protected under ADA with a disability in Plaintiff position would have found the work environment to be hostile and polluted with disability discrimination.

   b.   The conduct alleged is not what any reasonable person would expect from a gang of employees in prominent positions.

c.     Management level employees and Human Resource knew, or should have known, that their actions of conspiracy, retaliation, and defamation with the intent to label the plaintiff unfit for duty was unlawful.

d.     The Plaintiff complaints should have warranted a thorough investigation but Human Resources was not going to investigate themselves, so Tracy Young as the CEO was made aware of the conduct and neglected his duty to protect the Plaintiff from ongoing intentional acts of bullying, intimidation, harassment, humiliation, and retaliation. Each Defendant acted on behalf of themselves and should be held liable

e.     As a result of the severe and pervasive conduct by the Defendants in violations of Title I of the American Disability Act, Plaintiff have suffered and still suffers damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress, reputational harm, in addition; the plaintiff experienced nightmares and fear of leaving her home.

f.     The Defendants' unlawful actions were intentional, willful, thoughtfully planned, malicious, and/or done with a disregard of the Plaintiff right to be free from retaliation on the basis of her disability.

g.     Titlemax executed acts that discriminated, conspired, interfered with enjoyment of rights, and intimidated the plaintiff on the basis of her disability in violation of Title I of the 42 U.S.C. §12203b

h.   The Plaintiff has sustained and still suffers economic and

emotional injuries, resulting in damages in an amount to be proven at trial.


### Third Claim for Relief
### Continued Retaliation, Harassment, Hostile Work Environment in violation of
### *Violation of Title I of ADA 42 U.S.C. §12203(a)*
### (Titlemax of Georgia, Jason Broce, Clay Alexander, Greg Ludwig, Steve Thomas)


**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**


The 42 U.S. Code § 12203-a states "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter" The Plaintiff believes that this rule applies to TMX employees too.

**95.**   The Plaintiff was a qualified employee with a disability.  The defendants deliberately subjected the plaintiff to frequent unwelcome harassment, intimidation, humiliation, and a work environment that any person with a disability would consider hostile.

**96.**   The conduct of the defendants was unbelievable, so severe, and pervasive; the Plaintiff suffered extreme anxiety, stress, depression, humiliation, emotional distress, loss of self-esteem, insomnia, difficulty concentrating, disassociation, crying spells, social isolation, and loss of enjoyment of life, damage to her professional reputation,

and withdrawal from relationships. In addition, the plaintiff still experiences nightmares, fear of leaving her home, and unable to find peace.

97.    The Plaintiff seeks to learn the true intention behind TMX diagnosing her as suicidal, transferring her to Savannah, and failing to ensure she worked at a safe location. The Plaintiff believes that the Defendants intentionally tried to hurt her in efforts to keep her silent about unlawful and possible illegal acts that they knew were wrong. The Plaintiff's life was endangered and TMX neglected her.  Even if TMX employees do not find the Plaintiff worthy and valuable, they had a duty to ensure the Plaintiff was not working in an unsafe and hostile environment.

98.    The Defendant alleged that the Plaintiff medical provider misled her; TMX diagnosed the Plaintiff as suicidal and a threat to herself without making anyone aware of the alleged concerns. The Human Resources departments would make comments to the Plaintiff to make her feel less than others and found it humorous when they knew the Plaintiff was crying. The defendants used the Plaintiff's disability as a framework to further commit acts that were unlawful. Intentional, and discriminatory. Each Defendant acted on behalf of themselves and should be held liable.

      a.    The Plaintiff was made mockery of and completely humiliated by TMX Human Resource associates, Greg Ludwig, and Steve Thomas. TMX conduct was severe and pervasive, intentional, and reckless.

      b.    Titlemax retaliated, harassed and created an hostile work environment be the plaintiff opposed unlawful discrimination basis of her

disability in violation of Title I of the ADA 42 U.S. Code §

12203(a),O.C.G.A. 34-6A-5

    c.    Plaintiff has sustained economic and emotional injuries, resulting

in damages in an amount to be proven at trial.


### Fourth Claim for Relief
### Discrimination on the Basis of Race/Disparate Treatment in Violation of Title VII of the Civil Rights Act of 1964,
### 42 U.S.C. § 2000e, et seq. 42U.S.C. § 2000e-2(a)
### (Titlemax of Georgia)


**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

    **99.**    Plaintiff is an African American; a member of a protected class. The Plaintiff was meeting TMX expectations. The Plaintiff suffered adverse employment action when the defendants engaged in race discrimination conspiracies to remove her from offices; subsequently replacing her with Caucasian females and placing her in offices that had the highest slow file. This pattern of discriminatory conduct was intentional in efforts to make the plaintiff work much harder and to create a hostile work environment. The Defendants engaged in patterns of race discrimination unlawful acts that subjected the Plaintiff to being placed in offices that held the highest slow file and removing her staff from office because she is African American in violation of Title VII of the Civil Rights Act of 1964.

**100.** The Plaintiff alleges that the Defendants engage in patterns of conspiracy, coercion, and unlawful practices in order to discriminate against her due to her race. TMX did not subject similarly situated employees to the same treatment. Caucasian employees were not subjected to proving that they were qualified for their positions or experienced repeated changes to their staff. Caucasian employees were allowed to complete their general manager training, have audits conducted at their work site, and allowed to be the leading managers of their offices longer than the plaintiff was ever allowed to work as leading manager of any of the offices she managed. Caucasian employees of TMX were not reassigned to the worst offices in the region for performing well. The mentioned intentional and unlawful acts occurred under the leadership of Steve Thomas, and Greg Ludwig with the assistance of Human Resource employees aiding and abetting.

**101.** There is not one similarly situated Caucasian in the region that has generated more in revenue and profit from November 2017 to October 2020 than the plaintiff, acknowledged 3 times as the number one office in the district or region, reassigned 5 times, managed 13 employees in less than 2 years, and reassigned for extraordinary performance to the worst office with the highest slow file.

**102.** TMX took adverse employment actions by intentionally subjecting the plaintiff to threats of reducing her salary by termination, placing her on suspension, forcing her to work in an unsafe facility, failing to promote, denial of training, reassigning her to less favorable offices, forcing her to beg for lunch breaks and off

days, and terminating the plaintiff for protected activities on the basis of race discrimination.

      a.    The Defendants developed a consistent pattern of failing to promote instead choosing to reassign the plaintiff for actually meeting TMX expectations. The plaintiff termination and reassignments were a direct result of the plaintiff's complaints, opposition and the questioning of patterns that were unlawful and frequently practiced by employees of TMX with Human Resource aiding and abetting. The Defendants cannot show any legitimate nondiscriminatory reasons for its employment practices and any reasons given by TMX for its actions against the Plaintiff are pretextual.

      b.    The Plaintiff race was the determining factor and/or the motivating factor for the Defendants' pattern and practices of adverse employment action by intentionally using her race as a marketing tool.

      c.    Plaintiff does not believe any reasonable African American would have agreed to leave their home overnight to be placed in an office that would have decreased their earning potential due to the previous staff member's work, performance, and inability to meet performance goals in an honest and transparent way. A reasonable person of the African American race in the plaintiff position would have found their employment at TMX to be contaminated with race discrimination.

d.      Defendants' TMX pattern of discriminatory practices would deter any reasonable African American employee from engaging in protected activity.

e.      *Tabitha, Natasha, Ashley, Anna, and Susanne, were afforded the time to complete their general manager training. Rachel's general manager training is in question because her job title changed to general manager from store manager often and she wasn't subjected to patterns of unlawful conduct.*

f.      As a result of the severe and pervasive conduct by the Defendants in violations of Title VII, Plaintiff have suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress, reputational harm, in addition; the plaintiff experienced nightmares and fear of leaving her home. Plaintiff lost her desire to have children, and feels awful for being African American.

g.      The Defendants subjected the plaintiff to frequent and unwelcoming patterns of intentional unlawful, abusive, premeditated, malicious, coerced acts and done with reckless disregard to the Plaintiff right as an employee to be free from discrimination based on her race, African American.

h.      Titlemax discriminated against the plaintiff on the basis of race in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)

i.    The Plaintiff- is entitled to back pay, front pay, compensatory and

punitive damages in an amount proven at trial.

### Fifth Claim for Relief
### Discrimination on the Basis of Race/Disparate Treatment) in Violation of 42 U.S.C. §
### 1981, 42 U.S.C. § 2000e, et seq. 42U.S.C. § 2000e-2(a)
### (Titlemax of Georgia, Steve Thomas, Greg Ludwig, Doe 1-5)

**Plaintiff restates, re alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

"Although claims against individual supervisors are not permitted under Title VII, this court has found individual liability under § 1981 when [the defendants] intentionally cause an infringement of rights protected by Section 1981..."See Al-Khazraji v. Saint Francis College.

**103.**   The Defendant intentionally and recklessly violated Section 1981 when they discriminated against Plaintiffs in a tangible way with regards to her compensation, terms, conditions or privileges of employment.

**104.**   The Plaintiff is an African American; a member of a protected class. The Plaintiff was meeting TMX expectations. The Plaintiff suffered adverse employment action when the defendants engaged in conspiracies to remove her from offices; subsequently replacing her with Caucasian females and placing her in offices that had the highest slow file. This pattern of discriminatory conduct was intentional in efforts to make the plaintiff work much harder and to create a hostile work environment. The Defendants engaged in patterns that subjected the Plaintiff to being placed in

offices that held the highest slow file and removing her staff from office because she is African American in violation **42 U.S.C. § 1981**

**105.** The Plaintiff alleges that the Defendants engage in patterns of conspiracy, coercion, and unlawful practices in order to intentionally discriminate against her due to her race by not subjecting similarly situated employees to the same treatment. Caucasian employees were not subjected to proving that they were qualified for their positions or experienced repeated changes to their staff. Caucasian employees were allowed to complete their general manager training, have audits conducted at their work site, and allowed to be the leading managers of their offices longer than the plaintiff was allowed to work as leading manager of any of the offices she managed. Caucasian employees of TMX were not reassigned to the worst offices in the region for performing well. The mentioned intentional and unlawful acts occurred under the leadership of Steve Thomas, Frank Chilsom and Greg Ludwig with the assistance of Human Resource employees aiding and abetting.

- *In Columbus, GA February 10, 2020 Anna* Caucasian female reported to TItlemax Buena Vista Road as General Manager on Feb 10th while the Plaintiff was advised by the Defendants that she would be needed for two weeks in Savannah. During this time the Plaintiff had questions about the business license for the entire year of 2019. She complained about her work being used to evaluate employees, labeling of employees as targets, working without lunch breaks, being excluded from conversations about staff changes, and begging for an off day and lunch breaks.

• *In Savannah, GA March 26, 2021 -* General Manager Ashley Caucasian female was assigned to Titlemax #2 as the general manager of the TItlemax Skidaway Road in Savannah March 2021. The plaintiff complained about safety of the premises for the entire month of September 2020; one of the reasons the Plaintiff took FMLA leave of absence. Oct 6, 2020. The Defendants used the plaintiff disability to label her as "unfit for duty"; in efforts to establish a reason to continue with targeted discriminatory practices and patterns. PRIOR TO taking FMLA the plaintiff made several complaints about the safety of the premises. She complained about her work being used to evaluate employees, working without lunch breaks, being excluded from conversations about staff changes, begging for an off day and being disrespected.

• *IN June 2021 Garden City- In efforts to thwart the plaintiff claims of race discrimination, Defendants TMX placed an African American female in the office as general manager after terminating the plaintiff.*

• *Tabitha, Natasha, Ashley, and Anna, Susanne, were afforded the time to complete their general manager training. Rachel general manager training is in question because her job title changed to general manager from store manager often.*

**106.** There is not one similarly situated Caucasian in the region that has generated more in revenue and profit from November 2017 to October 2020 than the plaintiff, acknowledged 3 times as the number one office in the district or region,

reassigned 5 times in less than 2 years, managed 13 employees in less than 2 years and reassigned to for extraordinary performance to the worst office in the region that held the highest slow file.

**107.**  TMX took adverse employment actions by intentionally subjecting the plaintiff to threats of reducing her salary by termination, replacing with Caucasian females, placing her on suspension, forcing her to work in a unsafe facility, failing to promote, denial of training, reassigning her to less favorable office locations, forcing her to beg for lunch breaks and off days, and terminating the plaintiff because of protected activities on the basis of race discrimination.

    a.      Defendants discriminated against the plaintiff and conspired and subjected her to a pattern of adverse employment practices by failing to promote the plaintiff and choosing to reassign her for performing well on the basis of her race, African American and then replacing her with Caucasian females.

    b.      The Plaintiff race was the determining factor and/or a motivating factor of the Defendants' pattern of race discrimination.

    c.      The Defendants' intentional pattern of unlawful actions was done with malice and with a disregard to Plaintiff right to be free from discrimination based on her race, African American.

    d.      Plaintiff does not believe that any reasonable African American would have agreed to leave their home overnight to work in an office that would decrease their earning potential due to the previous staff member's work,

performance, and their inability to meet performance goals in an honest and transparent way. A reasonable person of the African American race in the plaintiff position would have found the work environment to be contaminated with discrimination based on race.

e.      The Defendant TMX pattern of discriminatory practices would deter any reasonable African American employee from engaging in protected activity.

f.      The Defendants subjected the plaintiff to frequent and unwelcoming patterns of intentional acts that were unlawful, intentional, abusive, reckless, conspired, and done with a disregard to Plaintiff right to be free from discrimination based on her race, African American.

g.      As a result of the severe and pervasive conduct by the Defendants in violation of Section 1981 the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress, reputational harm, In addition, the plaintiff experienced nightmares and fear of leaving her home. Plaintiff lost her desire to have children, and feel awful for being dark skinned African American.

h.      Titlemax discriminated against the plaintiff on the basis of race in violation of  42 U.S.C. § 1981,Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)

i.   Plaintiff- is entitled to back pay, front pay, compensatory and

punitive damages in an amount proven at trial.

### Sixth Claim for Relief
### Intentional Retaliation on the Basis of Race Discrimination in Violation of 42 U.S.C. § 1981, Section 704(a) of Title VII, U.S.C. § 2000e-3(a), (Titlemax of Georgia, Steve Thomas, Greg Ludwig, Doe 1-5)

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

**108.**   The Plaintiff multiple complaints and opposition to unlawful discrimination to the TMX Human Resource associates did not warrant the Defendants to conduct an internal investigation instead it prompted the defendants Human Resource to aid and abet in retaliation with the intent to punish the plaintiff for engaging in protected activities. The Defendants discriminated against Plaintiffs because of her protected activity and opposing unlawful act on the basis of race discrimination under 42 U.S.C. § 1981.

**109.**   As a result of the Plaintiff's complaints TMX employees consciously and intentionally participated in adverse action while knowing the plaintiff engaged in protected activities. When the plaintiff opposed the practices, the defendants continued to retaliate by repeating the same practices in both markets under the leadership of Steve Thomas with Human Resource aiding and abetting

**110.**   Under Greg's and Steve's leadership with Human Resource of TMX aiding and abetting the plaintiff experienced a pattern of retaliation by demoting her in front of her peers, reassigning the plaintiff to the less profitable office in the region

71

with the highest slow file, writing her up for asking for an off day, suspending the plaintiff, threatening to terminate her for reaching out for help. The parties mentioned subjected the plaintiff to conspiracies to move the plaintiff to different offices, and wrongfully terminated the plaintiff's employment because of her engagement of protected activities.

- While in Savannah, the parties mentioned in the above paragraph subjected the Plaintiff to a pattern of direct adverse action, when they used the plaintiff's work to promote/ transfer Ted, (Caucasian male) to a distinct side of town.

- The parties conspired and attempted to promote and transfer Chybria (light, African American, female) by using the Plaintiff performance to General Manager Position.

- The parties conspired and replaced the plaintiff with Ashley Jones (Caucasian female) by retaliating for taking a FMLA leave of absence. The parties willfully, intentionally, and wrongfully suspended the plaintiff so they could fabricate a story to label the plaintiff as unfit for duty. Also, terminated the plaintiff for her engagement in protected activities.

111.    Under Frank's and Steve's leadership with Human Resource of TMX aiding and abetting the plaintiff experienced a pattern of retaliation when the Plaintiff's work was used to evaluate and reassign her staff members to other offices in a short period of time. The parties intentionally conspired and subjected the plaintiff to a framework of conspiracies to move the plaintiff to different offices, and

misrepresented facts relating to her employment because she opposed acts that were discriminatory based on her race.

- While in Columbus, the parties mentioned in the above paragraph, subjected the Plaintiff to a pattern of direct adverse action, when they used the plaintiff's work to promote/ transfer Kimberly S. (Caucasian female) to a certain side of town.

- The parties conspired and transferred Trellis H. (light, African American, female) to an office based on the Plaintiff performance.

- The parties conspired and then promoted Latonia D. (brown skinned, African American, female) by using the Plaintiff to correct the performance problem at the location of Titlemax #5. Latonia was later promoted to General Manager Position after the blackout period.

- The parties conspired and replaced the plaintiff with Anna (Caucasian female) by taking adverse action because the plaintiff questioned the business license and opposed practices that were unlawful. The parties willfully and intentionally conspired and coerced the Plaintiff to going to Savannah under the impression she would be needed for 2 weeks and then placing her in one of the worst offices in the region for exceeding performance expectations.

**112.**   TMX took adverse employment action by intentionally reassigning the plaintiff with the worst slow files, reassigning her staff members, denial of training, reassigning her to less favorable office locations, and forcing her to beg for lunch breaks and off days and reassigning the plaintiff due to her engagement of  protected

activities. The plaintiff was forced to work off the clock at home and on-site in order to complete her daily responsibilities.

**113.**   The Plaintiff was hired with more experience than any store manager under her leadership. At no time was she promoted or transferred in less than 6 months to any office during her entire career. During the plaintiff's career she was transferred 10 times. As General Manager the Plaintiff was reassigned 5 times and managed 13 employees while only being in position in less than 2 years.  In her career she has not witnessed this kind of abuse and targeted infliction of power harassment of any similar situated employee. The plaintiff was taken advantage of by the defendants because of her race. It was not a common practice to treat employees as described yet TMX subjected the plaintiff to employment conditions that violated her rights while Human Resource associates aided and abetted.

> a.      The Defendants developed a consistent pattern of retaliation by failing to promote instead choosing to reassign the plaintiff for actually meeting TMX expectation. The plaintiff termination and reassignments were a direct result of the plaintiff's complaints, opposition, and questioning of patterns that were unlawful and frequently practiced by employees of TMX. The Plaintiff staff members were reassigned because the Plaintiff complained about unfair treatments and her work being used to evaluate employees under her leadership. The Defendants cannot show any legitimate reasons for its pattern of adverse action and any reasons given by TMX for its actions against the Plaintiff are pretextual.

b.     The Defendants subjected the plaintiff to frequent and unwelcoming patterns of intentional and premeditated retaliation based on race. This practice was unlawful, abusive, coerced, malicious, and done with reckless disregard to Plaintiff right to be free from discrimination and retaliation because she complained, opposed, and questioned what appeared to be a pattern of unlawful practices.

c.     As a result of the severe and pervasive conduct by the TMX employees the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress, reputational harm; in addition, the plaintiff experienced nightmares and fear of leaving her home. Plaintiff lost her desire to have children, and feels awful for being dark skinned African American.

d.     Defendants' retaliation on the basis of race discrimination and the abusive practices would deter any reasonable African American from engaging in protected activity.42 U.S.C. § 1981,Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

e.     Plaintiff is entitled to compensatory and punitive damages in an amount proven at trial

### Seventh Claim for Relief
**Retaliation on the Basis of *Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a)***

## (Titlemax of Georgia)

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

114.   The Plaintiff multiple complaints and opposition of unlawful discrimination to TMX Human Resource associates did not warrant the Defendant TMX to conduct an internal investigation instead it prompted the defendants Human Resource associates to aid and abet in retaliation with the intent to punish the plaintiff for engaging in protected activities. The Defendants discriminated against Plaintiffs because of her protected activity and opposing unlawful acts on the basis of race discrimination in violation of Title VII of the Civil Rights Act of 1964.

115.   As a result of the Plaintiff's complaints TMX employees consciously participated in adverse action while knowing the plaintiff engaged in protected activities. When the plaintiff opposed the practices, the defendants continued to retaliate by repeating the same practices in both markets under the leadership of Steve Thomas with Human Resource aiding and abetting.

116.   Under Greg's and Steve's leadership with Human Resource of TMX aiding and abetting the plaintiff experienced a pattern of retaliation by demoting her in front of her peers, reassigning the plaintiff to the less profitable office in the region with the highest slow file, writing her up for asking for an off day, suspending the plaintiff, and threatening to terminate her for opposing and questions unlawful acts. The parties mentioned subjected the plaintiff to a framework of conspiracies to move

the plaintiff to different offices, and wrongfully terminated the plaintiff's employment because of her engagement in protected activities.

•   While in Savannah, the parties mentioned in the above paragraph subjected the Plaintiff to a pattern of direct adverse action, when they used the plaintiff's work to promote/ transfer Ted, (Caucasian male) to a certain side of town.

•   The parties conspired and replaced the plaintiff with Ashley (Caucasian female) by retaliating for taking an FMLA leave of absence. The parties willfully and wrongfully suspended the Plaintiff so they could fabricate a story to label the Plaintiff as unfit for duty. Also, the Defendants terminated the plaintiff for her engagement in protected activities.

117.   TMX took adverse employment actions by intentionally threatening to reduce the plaintiff income by termination, placing her on suspension, forcing her to work in an unsafe facility, failing to promote, denial of training, reassigning her to less favorable office locations with the highest slow files, and forcing her to beg for lunch breaks and off days, and terminating the plaintiff for in protected activities.. The plaintiff was forced to work off the clock at home and on-site in order to complete her daily responsibilities. The plaintiff was deprived of her time to enjoy life by the abuse of TMX employees.

a.   The Defendant TMX developed a consistent pattern of retaliatory discrimination by failing to promote; instead choosing to reassign the plaintiff for actually meeting TMX expectations. The plaintiff termination and reassignment were a direct result of the Plaintiff's complaints, opposition, and

77

questioning of patterns that were unlawful and frequently practiced by employees of TMX. The Defendants cannot show any legitimate reasons for its pattern employment practices and any reasons given by TMX for its actions against the Plaintiff are pretextual.

b.    The Defendants subjected the plaintiff to frequent and unwelcoming patterns of intentional and premeditated retaliation. This practice was unlawful, abusive, coerced, malicious, and done with reckless disregard to Plaintiff right to be free from retaliation because she complained, opposed, and questioned what appeared to be a pattern of unlawful practices.

c.    As a result of the severe and pervasive conduct by TMX employees the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress, reputational harm, In addition, the plaintiff experienced nightmares and fear of leaving her home. Plaintiff lost her desire to have children, and feel awful for being African American.

d.    Defendants' retaliation on the basis of race discrimination and the abusive practices would deter any reasonable African American from engaging in protected activity. Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

e.    Plaintiff- is entitled to, compensatory and punitive damages in an amount proven at trial.

## Eighth Claim for Relief
## Harassment/Hostile Work Environment on the Basis of Race Discrimination in Violation of 42U.S.C. §1981, Section 703(a) of Title VII, 42U.S.C. § 2000e-2(a), 3(a) (Titlemax of Georgia, Clay Alexander, Greg Ludwig, Steve Thomas)

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

**118.** The Plaintiff multiple complaints did not warrant the Defendants to conduct an internal investigation instead it prompted TMX Human Resource associates to aid and abet in harassment to make the Plaintiff uncomfortable in efforts to create a hostile work environment. The Defendants subjected Plaintiffs to harassment and a hostile work environment because of her race in violation of 42 U.S.C. § 1981

**119.** The Defendants subjected the plaintiff to unwelcome harassment because of her race; therefore, making Titlemax responsible for the supervisor's acts of intentional negligence, intimidation, retaliation, discrimination, and many forms of harassment including power, discriminatory, personal and psychological harassment.

**120.** To include what's referenced above the Defendants harassed and created a hostile work environment each time a staff member was removed from under the plaintiff's leadership; forcing the plaintiff to continuously train new staff members. Intentionally making the plaintiff work much harder. The Defendants engaged in a pattern of intimidation, name calling, and abuse; causing the plaintiff to work in fear. The Plaintiff was forced to watch Caucasian females handed offices that she fixed; while she would be placed in the worst office in the region with the highest slow file.

Because the Plaintiff is African American, Titlemax intentional pattern of discriminatory practices landed the Plaintiff in the worst offices, with the highest slow file in the region forcing the Plaintiff to overwork and prove herself while Caucasian employees were treated more favorably. The Defendants made mockery of the plaintiff, humiliated the Plaintiff and engaged in intentional, coerced, and malicious acts of discrimination, retaliation, and harassment frequently.

121.  Defendants' intentional unlawful conduct and statements created a hostile work environment for Plaintiff because of her race, African American. The Defendant's statements and adverse actions towards the Plaintiff were unwelcoming, intentional, and intimidating. The Plaintiff requested to be demoted in order to relieve herself of the constant harassment. The Plaintiff made the request under the management of Steve Thomas, Frank Chilsom and Greg Ludwig in the Columbus and Savannah market because the unlawful practices were carried out in both markets.

122.  The plaintiff found herself crying and praying about the conduct of the Defendants. The Plaintiff began to feel depressed, uncomfortable, and fearful while performing her duties. Each Defendant acted on behalf of themselves and should be held liable.

123.  The Defendants developed a consistent and frequent pattern of targeted and intentional harassing practices. The plaintiff termination and reassignments were a direct result of the plaintiff's complaints, opposition to unlawful acts, and questioning of patterns that were unlawful and frequently practiced by employees of

TMX. The Defendants cannot show any legitimate reasons for its patterns of employment practices and any reasons given by TMX for its actions against the Plaintiff are pretextual.

a.     The Defendants subjected the plaintiff to frequent and unwelcoming patterns of racially motivated harassment that created a hostile work environment. This practice was intentional, unlawful, abusive, coerced, malicious, and done with reckless disregard to Plaintiff right to be free from harassment that created a hostile work environment because she complained, opposed, and/or questioned what appeared to be a pattern of unlawful practices.

b.     As a result of the severe and pervasive conduct by TMX employees the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells loss of enjoyment of life, humiliation, emotional distress, reputational harm, In addition, the plaintiff experienced nightmares, fear of leaving her home. Plaintiff lost her desire to have children.

c.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to the Plaintiff right to be free from race discrimination, harassment and abuse.

d.      A reasonable person of African American race in the plaintiff position would have found the work environment to be hostile by race discrimination, harassment, and retaliation.

e.      Management level employees and Human Resource knew, or should have known; that their conduct subjected the plaintiff to a hostile work environment was unlawful.

f.      Defendants did not exercise reasonable care to prevent the creation of a hostile work environment charged with race discrimination, and did not exercise reasonable care to protect the plaintiff from being exposed to the unwelcome behavior by her supervisors.

g.      Defendant TMX discriminatory harassing  and abusive practices on the basis of race would deter any reasonable African American from engaging in protected activity.42 U.S.C. §1981,Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

h.      TMX discriminated against the Plaintiff on the basis of race in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)

i.      Plaintiff- is entitled to back pay, front pay, compensatory and punitive damages in an amount proven at trial.

### Nineteenth Claim for Relief
### Hostile Work Environment/l Harassment on the Basis of Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964,Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a),3(a)
### (Titlemax of Georgia, Steve Thomas, Greg Ludwig, Clay Alexander, Jason Broce, Erin Fritts)

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

**124.** The Plaintiff multiple complaints to TMX did not warrant the Defendants to conduct an internal investigation instead it prompted the defendants Human Resource to aid and abet in harassment in efforts to create a hostile work environment. The Defendants subjected Plaintiffs to harassment and a hostile work environment because of her race in violation of Title VII of the Civil Rights Act of 1964.

**125.** The Defendant's subjected the plaintiff to unwelcome harassment because of her race; therefore, making Tracy Young and Titlemax responsible for his supervisor's acts of intentional negligence, intimidation, retaliation, discrimination, and many forms of harassment including power, discriminatory, personal and psychological harassment.

**126.** To include what's referenced above the Defendants harassed and created a hostile work environment each time a staff member was removed from under the plaintiff's leadership; forcing the plaintiff to continuously train new staff members. Intentionally making the plaintiff work much harder. The Defendants engaged in a pattern of intimidation, name calling, intentional negligence to provide a safe working environment, bullying, and workplace abuse causing the plaintiff to work in fear. The conduct of Greg was racially motivated to make the Plaintiff feel less than Caucasians. The Plaintiff was forced to watch Caucasian females handed offices that

she fixed; while she would be placed in the worst office in the region. Because the Plaintiff is African American, Titlemax intentional pattern of discriminatory practices landed the Plaintiff in the worst offices, with the highest slow file in the region; forcing the Plaintiff to overwork and prove herself while Caucasian employees were treated more favorably. The Defendants made mockery of the plaintiff, humiliated the Plaintiff and engaged in coerced and malicious acts of discrimination, retaliation and harassment; creating a hostile work environment.

**127.** Defendants' intentional unlawful conduct and statements created a hostile work environment for the Plaintiff because of her race, African American. The Defendant's statements and adverse actions to the Plaintiff were unwelcoming, intentional and intimidating. The Plaintiff requested to be demoted in order to relieve herself of the constant harassment she faced because of her race. Plaintiff made the request under the management of Steve Thomas, and Greg Ludwig in the Savannah market because the unlawful acts were carried out and intended to create a hostile work environment.

**128.** The plaintiff found herself crying and praying about the conduct of the Defendants. The Plaintiff began to feel depressed, uncomfortable, and fearful while performing her duties. Each Defendant acted on behalf of themselves and should be held liable.

**129.** Defendants developed a consistent and frequent pattern of targeted and intentional discriminatory harassment practices. The plaintiff termination and all reassignments were a direct result of the plaintiff's complaints, opposition to unlawful

acts and the questioning of patterns that were unlawful and frequently practiced by employees of TMX. The Defendants cannot show any legitimate reasons for its pattern employment practices and any reasons given by TMX for its actions against the Plaintiff are pretextual.

   a. The Defendants subjected the plaintiff to frequent and unwelcoming patterns of racially motivated harassment that created a hostile work environment. This practice was unlawful, abusive, coerced, malicious, and done with a reckless disregard of the Plaintiff right to be free from harassment that created a hostile work environment because she complained, opposed, and/or questioned what appeared to be a pattern of unlawful practices.

   b. As a result of the severe and pervasive conduct by TMX employees the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress, reputational harm, In addition, the plaintiff experienced nightmares, fear of leaving her home. Plaintiff lost her desire to have children.

   c. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to the Plaintiff right to be free from race discrimination, harassment and abuse.

d.     A reasonable person of African American race in the plaintiff position would have found the work environment to be hostile by race discrimination, harassment, and retaliation.

e.     Management level employees and Human Resource knew, or should have known, that their conduct subjected the plaintiff to a hostile work environment and it was unlawful.

f.     The Defendants did not exercise reasonable care to prevent the creation of a hostile work environment charged with race discrimination, and did not exercise reasonable care to protect the plaintiff from being exposed to the unwelcome behavior by her supervisor that created a hostile work environment.

g.     Defendant TMX harassing and abusive practices  on the basis of race would deter any reasonable African American from engaging in protected activity Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

h.     TMX discriminated against the Plaintiff on the basis of race in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)

i.     Plaintiff- is entitled to back pay, front pay, compensatory and punitive damages in an amount proven at trial

## Tenth Claim for Relief
## Color Discrimination (Disparate Treatment) in Violation of Title VII of the Civil Rights Act of 1964, 42U.S.C. §2000e, et seq
## (Titlemax of Georgia)

Plaintiff restates, realizes, and incorporates by reference all other Paragraphs of this

Complaint as if fully stated herein.

130.   Plaintiff is a dark skinned African American; a member of a protected

class. The Plaintiff was meeting TMX expectations. The Plaintiff suffered adverse

employment action when the defendants engaged in conspiracy to remove her staff

members from office; subsequently transferring them to a specific side of town to

work with lighter skinned general managers. The Defendants intentionally and

maliciously placed the Plaintiff in offices that had the highest slow file and low

earning potential in impoverished communities because she is dark skinned. This

pattern of discriminatory conduct was intentional in efforts to make the plaintiff work

much harder and to create a hostile work environment. The Defendants engaged in

patterns that subjected the Plaintiff to being placed in offices that held the highest

slow file on a specific side of town because of the color of her skin in violation of

Title VII of the Civil Rights Act of 1964.

131.   The Plaintiff alleges that the Defendants engage in patterns of

conspiracy, coercion, and unlawful practices in order to discriminate against her due

to the color of her skin. TMX did not subject similarly situated employees to the

same treatment. Lighter skinned employees were not subjected to proving that they

were qualified for their positions or experienced repeated changes to their staff. Light

skinned employees were allowed to complete their general manager training, have

audits conducted at their work site, and allowed to be the leading managers of their

offices longer than the plaintiff was allowed to work as leading manager of any of the

offices she managed. Light skinned employees of TMX were not demoted to the worst offices in the region for performing well and placed in the least earning potential offices in impoverished communities. The mentioned intentional and unlawful acts occurred under the leadership of Steve Thomas, Frank Chilsom, and Greg Ludwig with the assistance of Human Resource employees aiding and abetting. Under the leadership of Steve Thomas the plaintiff staff members were intentionally removed from office and placed in the offices with the highest earning potential with general managers that are lighter than the plaintiff leaving her to work alone, beg for lunch breaks, and start new training for new employees therefore creating a hostile work environment with the intent of color discrimination.

132.   The parties conspired and attempted to promote and/ or transfer Chybria (light, African American, female) by using the Plaintiff performance knowing that it's impossible to learn 4 positions in 2 months of employment. TMX removed the Plaintiff staff members from her leadership and placed them under the leadership of light skinned employees, leaving the Plaintiff to work alone, begging for lunch breaks and off days. TMX would rehire a new employee for the Plaintiff to train and never thought of doing the same to other general managers continuously in both markets.

133.   There is not one similar situated light skinned employee in the region that has generated more in revenue and profit from November 2017 to October 2020 than the plaintiff, acknowledged 3 times as the number one office in the district or region, reassigned 5 times as general manager in less than 2 years,, managed 13

employees in less than 2 years and demoted for extraordinary performance to the worst office with the highest slow file in impoverished communities.

**134.** TMX took adverse employment actions by intentionally subjecting the plaintiff to threats of reducing her salary by termination, placing her on suspension, forcing her to work in a unsafe facility, failing to promote, denial of training, and reassigning her to less favorable office locations in impoverished communities, forcing her to beg for lunch breaks and off days, and terminating the plaintiff for in protected activities on the basis of color discrimination.

a.     Defendants developed a consistent pattern of failing to promote instead choosing to demote the plaintiff for actually meeting TMX expectation. The plaintiff termination was a direct result of the plaintiff's complaints, oppositions and the questioning of patterns that were unlawful and frequently practiced by employees of TMX. The Defendants cannot show any legitimate nondiscriminatory reasons for its employment practices and any reasons given by TMX for its actions against the Plaintiff are pretextual.

b.     Plaintiff color was the determining factor and/or a motivating factor for the Defendants' pattern and practices of adverse employment action by intentionally using her color to deny her the opportunity to work on what is considered "the white side of town" in offices with higher earning potentials, and her color to deny training or opportunity for promotion or pre-promotion training.

c.   Plaintiff does not believe any reasonable dark-skinned person not would have agreed to leave their home overnight to be placed in an office that would have decreased their earning potential due to the previous staff member's work, performance, and inability to meet performance goals in an honest and transparent way. A reasonable person of African American race in the plaintiff position would have found their employment at TMX to be contaminated with color discrimination and segregation.

d.   Defendants' TMX pattern of discriminatory practices would deter any reasonable dark-skinned person from engaging in protected activity.

e.   *Kristen, Niya, Gabriel, Ty, and Valencia, Tabitha, and Natasha were afforded the time to complete their general manager training and not subjected to color discrimination. They were treated more favorably than the plaintiff at all times.*

f.   As a result of the severe and pervasive conduct by the Defendants in violations of Plaintiff have suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress, reputational harm, in addition, the plaintiff experienced nightmares, and fear of leaving her home. Plaintiff lost her desire to have children due to the extreme conduct of the employees of Titlemax.

g.   Defendants subjected the plaintiff frequent and unwelcoming pattern of intentional acts that were conspired, unlawful, systemic, intentional, willful, abusive, premeditated, malicious, and done with reckless disregard to the Plaintiff right as an employee to be free from discrimination basis of color.

h.   Titlemax discriminated against the plaintiff on the basis of color in violation of  42 U.S.C. § 1981,Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)

i.   Plaintiff- is entitled to back pay, front pay, compensatory and punitive damages in an amount proven at trial.

**Eleventh Claim for Relief**
**Retaliation based on Color in Violation of the Title VII of the Civil Rights Act of 1964, Section 704(a) of Title VII,42 U.S.C. § 2000e-3(a).**
**(Titlemax of Georgia,)**

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

**135.**   The Plaintiff multiple complaints and opposition of unlawful discrimination to TMX Human Resource associates did not cause the Defendant TMX to conduct an internal investigation instead it prompted the defendants Human Resource associates to aid and abet in retaliation with the intent to punish the plaintiff for engaging in protected activities. The Defendants discriminated against Plaintiffs because of her protected activity and opposing unlawful acts on the basis of color discrimination in violation of Title VII of the Civil Rights Act of 1964.

91

**136.** Under Greg's and Steve's leadership with Human Resource of TMX aiding and abetting the plaintiff experienced a pattern of retaliation by demoting her in front of her peers because of the color of her skin by reassigning the plaintiff to the less profitable office in the region in impoverished communities, writing her up for asking for an off day, suspending the plaintiff, threatening to terminate her for reaching out for help. The parties mentioned subjected the plaintiff to a framework of conspiracies to move the plaintiff to different offices, used the color of her skin to determine the location she would report for duty, and wrongfully terminated the plaintiff's employment because of her engagement in protected activities. Each Defendant acted on behalf of themselves and should be held liable.

      a.    Defendants developed a consistent pattern of retaliation by failing to promote instead choosing to demote the plaintiff to offices with the highest slow file in impoverished communities for actually meeting TMX expectation. The plaintiff termination and reassignment were a direct result of the Plaintiff's complaints, opposition to and the questioning of patterns that were unlawful and frequently practiced by employees of TMX. The Defendants cannot show any legitimate reasons for its pattern employment practices and any reasons given by TMX for its actions against the Plaintiff are pretextual.

      b.    Defendants subjected the plaintiff to frequent and unwelcoming patterns of intentional and premeditated retaliation because of her skin color. This practice was intentional, unlawful, abusive, coerced, malicious, and done with reckless disregard to the Plaintiff right to be free from retaliation because

she complained, opposed, and questioned what appeared to be a pattern of unlawful practices.

      c.     As a result of the severe and pervasive conduct by the TMX employees the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress, reputational harm, In addition, the plaintiff experienced nightmares, fear of leaving her home. Plaintiff lost her desire to have children, and feel ashamed of being African American and began to dislike the color of her skin.

      d.     Defendants' retaliatory and abusive practices would deter any reasonable dark skinned person engaging in protected activity. Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

      e.     Plaintiff- is entitled to back pay, front pay, compensatory and punitive damages in an amount proven at trial

## Twelfth Claim for Relief
### Harassment/Hostile Work Environment on the Basis of Color Discrimination in Violation of Title VII of the Civil Rights Act of 1964, Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a),3(a)
### (Titlemax of Georgia))

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

**137.** The Plaintiff multiple complaints to Defendants' it did not cause Defendants to conduct an internal investigation instead it prompted the defendants Human Resource to aid and abet in harassment in efforts to create a hostile work environment. Each Defendant acted on behalf of themselves and should be held liable. The Defendants subjected Plaintiffs to harassment and a hostile work environment because of her color in violation of Title VII of the Civil Rights Act of 1964

**138.** The Defendant's subjected the plaintiff to unwelcome harassment because of the color of her skin; therefore, making Tracy Young and Titlemax responsible for his supervisor's acts of intentional intimidation, retaliation, discrimination, and many forms of harassment including power, discriminatory, personal and psychological.

**139.** The Defendants harassed and created a hostile work environment when they had a brown skinned female general manager visit the plaintiff office to conduct an audit of the plaintiff's work after the plaintiff informed Human Resource Greg has not done an audit of the plaintiffs work nor reviewed them as he did for other general managers. Human Resource allowed Greg Ludwig to use brown African American females to create a hostile work environment, to engage in intimidation practices, and to perform the duties of the District Director; the plaintiff numbers were better than the general manager Niya. The defendants refused to give the plaintiff the opportunity to train for promotion and used Niya to intimidate the plaintiff. Greg

kept asking if certain things were done and when she would say yes, he would ask her if she was sure over and over. The Plaintiff left the lobby and went to the back.

**140.**  The Defendants knew that the plaintiff's work made her qualified to work in one of the bigger offices that was considered the  "the Caucasian side of town" however,  Greg and Human Resources still insisted on placing the Plaintiff in the offices in communities that were impoverished due to the color of her skin. Because of the color of the plaintiff's skin Titlemax intentional discriminatory practices landed the plaintiff in the worst offices, with the highest slow file, in impoverished communities only for her to be made mockery of and prove that her work was sufficient and effective while lighter skinned employees were placed in offices that held a higher earning potential; therefore creating a hostile work environment.

**141.**  Greg Ludwig referred to the plaintiff by the color of her skin by "Dear Brown". Plaintiff nickname is "Dear" and last name is Brown. Greg Ludwig was asked not to refer to the plaintiff as Dear Brown. He did not use another employee's last name when he referred to them by their nickname. This practice was intentional, hurtful, malicious, and constant. The Plaintiff was depressed, uncomfortable, and worked in fear while performing her duties.

**142.**  Defendants subjected the plaintiff to frequent and unwelcoming patterns of intentional and premeditated discriminatory harassment. This practice was unlawful, abusive, coerced, malicious, intentionally done with reckless disregard to Plaintiff right to be free from harassment that created a hostile work environment

because she complained, opposed, and questioned what appeared to be a pattern of unlawful practices.

     a.    Defendants developed a consistent and frequent pattern of harassing the plaintiff by placing the Plaintiff in impoverished communities despite her performance because she is dark skinned. The plaintiff termination and reassignments were a direct result of the plaintiff's complaints, opposition to and the questioning of patterns that were unlawful and frequently practiced by employees of TMX. The Defendants cannot show any legitimate reasons for its pattern employment practices and any reasons given by TMX for its actions against the Plaintiff are pretextual.

     b.    As a result of the severe and pervasive conduct by the TMX employees the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress, reputational harm, In addition, the plaintiff experienced nightmares, fear of leaving her home. Plaintiff lost her desire to have children.

     c.    A reasonable person dark skinned in color in the plaintiff position would have found the work environment to be hostile due to harassment, retaliation, and discrimination on the basis of color.

d.      Management level employees and Human Resource knew, or should have known, that their conduct subjected the plaintiff to a hostile work environment.

e.      Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to the Plaintiff right to be free from color discrimination, harassment and abuse.

f.      Defendants did not exercise reasonable care to prevent the creation of a hostile work environment charged with color discrimination, and did not exercise reasonable care to protect the plaintiff from being exposed to the unwelcome behavior.

g.      Defendant TMX harassing and abusive practices  on the basis of color discrimination would deter any reasonable dark skinned person from engaging in protected activity Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

h.      TMX discriminated against the Plaintiff on the basis of color in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)

i.       Plaintiff- is entitled to back pay, front pay, compensatory and punitive damages in an amount proven at trial.

### Thirteenth Claim for Relief
### Gender Discrimination (Disparate Treatment), in Violation of Title VII of the Civil Rights Act of 1964, 42U.S.C. § 2000e, et seq, 42 U.S.C. § 2000e-2(a)

### (Titlemax of Georgia)

97

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

143. The plaintiff is a female. She suffered adverse action when TMX employees engaged in conspiracy, fraudulent inducement, and coercion and intentional discrimination when the defendants conspired to have the plaintiff relocate to the city of Savannah, Georgia and made false promises to promote district director due to her performance. The plaintiff exceeded TMX expectations in all areas of business in an honest and transparent way. The Defendants of TMX terminated Frank Chilsom and did not close any establishments that would cause for elimination of a position in the region. Instead TMX divided the districts between Greg and Mike so that their income would increase significantly, while the Plaintiff was simply left earning the same salary as she did prior to coming to Savannah. The Plaintiff still believed she was going to be promoted to a District Director position when she returned to work in March 2021 at some point but she was humiliated instead in violation. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq

144. Jason Broce expressed to the Plaintiff that she should be happy that she still has a job. During one of the conference calls Greg stated that TMX was adding 2 area manager positions to each district before the Plaintiff was terminated. Area manager was not the position the Plaintiff was promised.

145. The Defendants did not pay the plaintiff her fair share of profit of $ 200,000 and it is still owed to her. The Defendants received their percentage profit from the Plaintiff performance when she exceeded expectations. The Defendants did

not contribute to any part of the Plaintiff training material that led to the increase of the return of assets. The Plaintiff did not complete general manager training; however she exceeded expectations. (The Plaintiff asked EEOC to add equal pay to her complaint several times but] they refused to do so)

146.   The TMX knew or should have known the likelihood of eliminating a position before making false promises to the Plaintiff. Also TMX knew changing the Plaintiff employment status from exempt to nonexempt throughout the year, her hourly pay to $17.00, 14.00, 13.50 was wrong. TMX has not explained how the Plaintiff earned the same pay in two different offices that did not have the same total account.

147.   The plaintiff alleges the Defendants did not place Gabriel, Raydell, or, Leon in the worst offices in the region when they performed well and neither one of them has achieved what the plaintiff has achieved since the plaintiff was promoted as Store Manager and General Manager. Gabriel was not denied the opportunity to earn more income for himself or placed in an office that is in a less fortunate community.

148.   The defendants took adverse action when they eliminated a district director position; forcing the Plaintiff to face financial hardship because of their deceit. Also forcing her to work in an unsafe facility, denying her training and the opportunity to be a trainer, reassigning her to less favorable office locations in impoverished communities, and using the Plaintiff performance to advance male employees while she had to prove herself over and over.

a.   The plaintiff was discriminated against for complaining about gender discrimination, opposing and the questioning of patterns that were unlawful and frequently practiced by employees of TMX. The Defendants cannot show any legitimate nondiscriminatory reasons for its employment practices and any reasons given by TMX for its actions against the Plaintiff are pretextual.

b.   Plaintiff gender was the determining factor and/or a motivating factor for the Defendants' pattern and practices of adverse employment action by intentionally treating her differently from male co-workers.

c.   A reasonable female e in the plaintiff position would have found their employment at TMX to be contaminated with gender discrimination.

d.   Defendants' TMX pattern of discriminatory practices would deter any reasonable female from engaging in protected activity.

e.   *Raydell, Leon, Gabriel, Trellis, Greg, and Mike were not subjected to gender discrimination. They were treated more favorably than the plaintiff at all times.*

f.   As a result of the severe and pervasive conduct by the Defendants in violations of Title VII, Plaintiff have suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells loss of enjoyment of life, humiliation, emotional distress, reputational harm, in addition, the plaintiff experienced nightmares, and fear of leaving her home.

100

Plaintiff lost her desire to have children, and feel ashamed of being dark skinned African American.

g.  Defendants subjected the plaintiff frequent and unwelcoming patterns of intentional acts that were conspired, unlawful, systemic, intentional, willful, abusive, premeditated, malicious, and done with reckless disregard to the Plaintiff right as an employee to be free from discrimination basis of her gender.

h.  Titlemax discriminated against the plaintiff on the basis of gender in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)

i.  Plaintiff- is entitled to back pay, front pay, compensatory and punitive damages in an amount proven at trial.

## Fourteenth Claim for Relief
## Hostile Work Environment  on the Basis of  Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964 ,Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a),3(a)
## (Titlemax of Georgia)

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

**149.**  The Plaintiff multiple complaints to TMX did not cause Defendants to conduct an internal investigation instead it prompted the  Human Resource associates to aid and abet in discriminatory and retaliatory acts that created a hostile work environment because she is a  female. The Defendants subjected Plaintiffs to

harassment and a hostile work environment because of her gender in violation of Title VII of the Civil Rights Act of 1964

**150.** The Defendants' conduct created a hostile work environment for Plaintiff because of her gender. Defendants' Human Resource department statements to the Plaintiff were misleading and deceitful. TMX forced the Plaintiff to lift and carry heavy sandbags, forced her to go behind the building at night that they knew was unsafe, forced her to work off the clock because she did not have children and could dedicate time. TMX treated the Plaintiff like she was a man instead of female. She was forced to dispose of heavy office furniture, told she had to cut grass and she was less deserving than Gabriel and Leon by Human Resource when she mentioned she was treated differently from the males. The Plaintiff was disrespected often by Human Resource and Greg especially when she complained.

**151.** Defendants intentionally harassed and created a hostile work environment from March 2021 until she was terminated. She repeatedly asked for the behavior to cease. When the defendants were told that their actions brought the plaintiff to tears they still would not leave her alone. If it was not Greg it was Clay. If it was not Clay then it was Jason.

**152.** The defendants had the opportunity to correct their behavior but chose to turn up the heat when the plaintiff complained.  Greg's, Clay, Jason and Steve behavior were unacceptable and created a hostile environment. The plaintiff was denied all opportunities to earn more money and was treated less than the men working for Titlemax in both markets.

**153.**   As a result of the severe and pervasive conduct by the TMX employees the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress, reputational harm, In addition, the plaintiff experienced nightmares, fear of leaving her home. Plaintiff lost her desire to have children.

a.   Defendants subjected the plaintiff to frequent and unwelcoming patterns of intentional and premeditated discriminatory harassment. This practice was unlawful, abusive, coerced, malicious, intentionally done with reckless disregard to Plaintiff right to be free from harassment that created a hostile work environment because she complained, opposed, and questioned what appeared to be a pattern of unlawful practices.

b.   A reasonable female in the Plaintiff position would have found the work environment to be hostile and polluted by gender discrimination and abuse.

c.   Management level employees and Human Resource knew, or should have known, that their conduct subjected the plaintiff to a hostile work environment.

d.   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to the Plaintiff right to be free from gender discrimination, harassment and abuse.

e.  A reasonable female in the plaintiff position would have found the work environment to be hostile due to harassment, retaliation, and discrimination on the basis of gender.

f.  Defendants did not exercise reasonable care to prevent the creation of a hostile work environment charged with gender discrimination, and did not exercise reasonable care to protect the plaintiff from being exposed to the unwelcome behavior.

g.  Defendant TMX harassing and abusive practices on the basis of gender discrimination would deter any reasonable female from engaging in protected activity Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

h.  TMX discriminated against the Plaintiff on the basis of gender in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

i.  Plaintiff- is entitled to back pay, front pay, compensatory and punitive damages in an amount proven at trial.

## Fifteenth Claim for Relief
## Defamation OCGA§ 51-5-1
## (Titlemax of Georgia, Greg Ludwig, Rachel Hudson, Tabitha McCallum, Kelly Cummings, and Doe 1-5).

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

154.  The Defendants known and unknown has made false statements about the Plaintiff to third parties alleging that the plaintiff was in a hospital, suicidal and a threat to herself, wrongfully repossessed a vehicle, engaged customers in "sheer"

pajamas pants, she is bizarre, and other defamatory statements. The Defendants have intentionally sexualized the plaintiff employment matter insinuating that she engaged with their customers in attire that exposed her underwear or private parts without proof.

155.  The Defendants have communicated information to third parties without any supporting facts. The Defendants communicated information with the intent to mislead an investigator and others.  The employees of TMX also went on a hunt to recruit employees that were willing to aid and abet in acts of defamation. The Defendants intentionally made misleading statements with the purpose of humiliating, injuring, and or damaging the Plaintiff's reputation.

156.  The Human Resource associates of TMX neglected their obligation to investigate any and all concerns brought forth by the Plaintiff and those brought forth by others because at least one of them was aiding, abetting and, or participating in acts of defamation at all times.TMX employees knew or should have known they were giving false information without proof to third parties.

157.  The Defendant's assertions were intended as statements of facts and not opinions. Plaintiff believes that Defendant acts, conspired to, and did negligently, recklessly, and intentionally cause internal and external publications of defamation of Plaintiff to third parties. The defendants failed to investigate adequately or verify purported facts underlying the defamatory assertions. Defendant statements were made with ill will for the Plaintiff.  Therefore, there is no privilege to protect the

Defendants from liability for any of each defamatory act that has been stated or written.

158.   As a result of the severe and pervasive defamation by TMX employees the Plaintiff has suffered damages, including, but not limited to: , pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress, and reputational harm. In addition, the plaintiff experienced nightmares, and fear of leaving her home.

159.   EACH assertion made by the TMX and employees are in the hands of the defendants and the proof will be subject to discovery.

160.   WHEREFORE, plaintiff demands judgment against the defendant, jointly and severally, As follows:

a.      For compensatory damages in an amount to be proven at trial;

b.      For punitive damages in an amount to be proven at trial;

c.      For the Plaintiff reasonable attorneys' fees and costs(if applicable)

d.       For such other and further relief as this Court deems fair and just.

### Sixteenth Claim for Relief
### Intentional Infliction of Emotional Distress
### (All Defendants)

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

**161.**  The Defendants and each of them engaged in outrageous and or extreme conduct towards the Plaintiff with the intention to cause, or with reckless disregard for the probability of causing the Plaintiff emotional distress. The Plaintiff suffered and continues to suffer from severe emotional distress due to the intentional acts committed by each of the Defendant mentioned and not mentioned in this complaint. The conduct was a pattern and practice of extreme and outrageous behavior. The conduct was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing emotional distress. This conduct was not the sort of behavior expected from an employer.

**162.**  The Defendants and each of them condoned, participated, and committed outrageous and extreme acts mentioned in this complaint and those that are not mentioned.

**163.**  The Defendants, and each of them, committed the acts as alleged maliciously with the sole intention of harming the Plaintiff and improper motive amounting to malice, and in conscious disregard of the harm the Plaintiff suffered and continues to suffer.

**164.**  TMX employees known and unknown in this complaint committed, aided and abetted in discriminatory, retaliatory, harassing, and or other unlawful and abusive acts due to the Plaintiff's engagement in protected activity. The behavior and acts of the Defendants seem to be acceptable to Tracey Young (CEO) because he was aware of the conduct of his employees and failed to intervene.

**165.**  As a direct and proximate result of the Defendant's intentional, malicious, reckless, abusive, and unlawful infliction of emotional distress, the Plaintiff has suffered and continues to suffer from extreme anxiety, humiliation, embarrassment, emotional distress, sadness, fearful of leaving her home, insomnia, depression, crying spells, disassociation, loss of enjoyment of life.

**166.**  WHEREFORE, plaintiff demands judgment against the defendant, jointly and severally, As follows:

**a.**      For compensatory damages in an amount to be proven at trial;

**b.**      For punitive damages in an amount to be proven at trial;

**c.**      For the Plaintiff reasonable attorneys' fees and costs(if applicable)

**d.**       For such other and further relief as this Court deems fair and just.

### Seventeenth Claim for Relief
### Wrongful Termination in violation of Public Policy
### (Titlemax of Georgia, Erin Fritts, Greg Ludwig)

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

**167.**  The Plaintiff believes and alleges that the Defendants' decisions to harass, retaliate and discriminate against her, as alleged, was motivated by the Plaintiff's race, gender, color, disability, questioning and opposing unlawful conduct. The plaintiff was terminated for refusing to be subjected to such conduct. The Defendants intentionally executed the mentioned discrimination, harassment, and retaliation; creating work conditions so intolerable that the Plaintiff requested to be

108

demoted in effort to relieve herself of the responsibilities that forced her to be subjected to a continuation pattern of unlawful acts; the was Plaintiff terminated instead.

**168.** TMX alleges that the plaintiff had a vehicle wrongfully repossessed. Even if the plaintiff did do such a thing, the IAA driver is solely responsible for the wrongfully repossession because all repossessions are supposed to be reported to the local authorities and the vendor is supposed to identify the full V.I.N. of all voluntary and involuntary repossessed vehicles. The repossession could have and should have been prevented if and only if IAA revealed the full V.I.N to the vendor they assign to recover a vehicle. Greg Ludwig knew that Kelly Cummings sent/copied him an email informing him that she was having the vehicle removed and he secretly communicated with her up until he found the time to terminate the plaintiff after she labored all day. Erin Fritts aided Greg in his unlawful, malicious act, and neglected her duty as a Human Resource Specialist to investigate and grant the Plaintiff due process.

**169.** Nathaniel knew or should have known that part of his role as Regional Vice President of Operations that the Plaintiff was entitled to due process. Mr. Anderson deprived the Plaintiff of her "property right" which is protected under the Fifth Amendment of the United States Constitution. The Plaintiff was entitled to know the nature of the alleged misconduct or performance deficiencies and given a reasonable opportunity to respond to those allegations before any decisions of adverse action were enforced. Nathaniel's decision to terminate the Plaintiff can NOT

be justified. Each person working in the Human Resource Department, the Benefits Department, Greg Ludwig, Alexandria Tropea, and the CEO knew of the Plaintiff protected activity and opposition of unlawful discriminatory practices.

**170.**   Greg Ludwig knew the Plaintiff did not violate the company policy and did not make any efforts to speak with the Plaintiff about the incident that led to her termination. Greg was 100% aware of the Plaintiff protected activity and he knew of the complaints made against him to the Human Resource Department.  He also knew that associates of Human Resource were aiding and abetting in all unlawful acts he took against the Plaintiff.

**171.**   Erin Fritts knew that she was involved in the unfit for duty scheme and she was 100% aware of the Plaintiff's protected activity. Erin intentionally and maliciously neglected her duties as a human resource representative with the intent of demoralizing and retaliating against the plaintiff for questioning the actions of Human Resource. She conspired, aided, and abetted in unlawful acts. She knew or should have known that the Plaintiff had the right to due process and deserve the opportunity to know the policy she was accused of violating.

**172.**   The plaintiff was the leading manager in the office and Kelly was the subordinate. As a pattern describe with involving three different employees Greg Ludwig spoke with the plaintiff subordinates in secret when heal knew he was engaging in activities that deprived the plaintiff of her right to work in an environment free of discrimination, retaliation, and harassment. The Plaintiff believes that she cannot be liable for an email of another employee sent from their personal

email address that was assigned by TMX that is password protected. The Defendant's policy does not state that a general manager is responsible for emails sent by a subordinate.

173. Secondly, the Plaintiff believes that she cannot be liable for a job she was not employed to do such as repossession and/or the transport of any vehicle, reporting the secured unit to the local authorities or any damages that may have occurred in the process. If the Defendant's justification is that the plaintiff is liable for the actions of a recovery agent, then the plaintiff and every employee should be licensed as a recovery/wrecker agent and also compensated for each and every recovered, transported, and/or secured vehicle from 1998 to the current date.

174. Defendants, and each of them, committed or engaged in acts as alleged recklessly, intentionally, and maliciously, with intentions of harming the Plaintiff because of their own ulterior motives and did so with a conscious disregard of the Plaintiff's rights and the harm she did suffer and continue to suffer.

175. TMX discharge of the plaintiff is a direct result of the continuation of patterns and practices of discrimination and retaliation against the Plaintiff on the basis of her protected class and activities in violation of public policy. Any reason given is pretextual.

176. WHEREFORE, plaintiff demands judgment against the defendant, jointly and severally, As follows:

a.    For compensatory damages in an amount to be proven at trial;

b.    For punitive damages in an amount to be proven at trial;

c.      For the Plaintiff reasonable attorneys' fees and costs(if applicable)

d.      For such other and further relief as this Court deems fair and just.

## Eighteenth Claim of Relief
## Intentional Interference with Employment by third party
## (Doe 1 of 5, Kelly Cummings, Nathaniel Anderson, Erin Fritts, Greg Ludwig, and IAA)

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

177.  After the Plaintiff was made aware of Kelly Cummings' error she took charge of the situation immediately as any general manager would do. The Plaintiff immediately made calls to IAA and TMX of Eufaula to make each party aware of the error of a wrongful repossession

178.  Kelly Cummings knowingly, willingly, and purposely gave false information to law enforcement to protect herself. Kelly knew she sent an email to Greg Ludwig and TMX of Alabama to have a vehicle removed from the premises. Kelly knew or should have known that someone would have received a form of corrective action due to her error therefore; she acted with malice and purpose to protect herself and her career at TMX. Kelly had no regard for the Plaintiff or the harm she would cause. Ms. Cummings  should be held liable for intentionally and recklessly interfering with the Plaintiff employment  with TMX

179.  Nathaniel Anderson intentionally interfered with the Plaintiff's employment by having the Plaintiff wrongfully terminated by two individuals that

the Plaintiff complained about. Nathaniel knew or should have known that part of his role as a Regional Vice President of Operations; the Plaintiff was entitled to due process. Mr. Anderson deprived the Plaintiff of her "property rights" which are protected under the Fifth Amendment of the United States Constitution. The Plaintiff was entitled to know the nature of the alleged misconduct or performance deficiencies and given a reasonable opportunity to respond to those allegations before any decisions or adverse action was enforced. Nathaniel's decision to terminate the Plaintiff can NOT be justified. Each person working in the Human Resource Department, the Benefits Department, Greg Ludwig, Alexandria Tropea, and the CEO knew of the Plaintiff protected activity. If Nathaniel was aware of the protected activity; he still neglected his duty to ensure that he was not violating the law and depriving the Plaintiff of her constitutional rights. If he was not aware of the plaintiff's protected activity then TMX acted with malice and conspired to use Nathaniel Anderson to retaliate against the Plaintiff for engaging in protected activities; still Mr. Anderson neglected his duty to ensure that he was not violating the law and depriving the Plaintiff of her rights. Mr. Anderson should be held liable for intentionally interfering with the Plaintiff's employment with TMX.

**180.**   Greg Ludwig knew the Plaintiff did not violate the company policy and did not make any efforts to speak with the Plaintiff about the incident that led to her termination. Greg was 100% aware of the Plaintiff protected activities and he knew of the complaints made against him to the Human Resource Department.  He also knew that associates of Human Resource were aiding and abetting in all unlawful acts he

113

took against the Plaintiff. He continued with his abusive behavior because there had been no repercussions for his unlawful acts. Greg knew or should have known that he should have recused himself from any and all matters involving investigations and the termination of the Plaintiff. Instead he conspired to retaliate by having the Plaintiff terminated while depriving the Plaintiff of her property rights. Greg knew or should have known that by omitting and or misrepresenting facts was intentional negligence and interference of the Plaintiff's employment with TMX. Greg had no regard for the Plaintiff or the harm he would cause the plaintiff. Mr. Ludwig should be held liable for intentionally and maliciously interfering with the Plaintiff's employment with TMX.

**181.**   Erin Fritts knew that she was involved in the unfit for duty scheme and she was 100% aware of the Plaintiff's protected activity. Erin intentionally and maliciously neglected her duties as a human resource representative with the intent of demoralizing and retaliating against the plaintiff for questioning the actions of Human Resource. She conspired, aided, and abetted in unlawful acts. She knew or should have known that the Plaintiff had the right to due process and deserve the opportunity to know the policy she was accused of violating. When the opportunity presented itself, Erin retaliated against the Plaintiff, aided Greg in unlawful acts, neglected her responsibility to conduct an investigation, and expressed to the Plaintiff that she was responsible for all errors of white employees under her leadership, and wrongfully terminated the Plaintiff.  Erin did not recuse herself but instead continued to violate and deprive the Plaintiff of her rights.  There is no lawful justification for

Erin privileged misconduct and abuse. Erin had no regard for the Plaintiff or the harm the Plaintiff would face due to her reckless intentional abusive behavior. Erin Fritts is responsible for damages the Plaintiff has suffered and continues to suffer. Ms. Fritts should be held liable for intentionally and maliciously interfering with the Plaintiff's employment with TMX.

182.   IAA knew its employee took possession of a vehicle that was not assigned to its company for repossession. Instead of returning the vehicle IAA maliciously and intentionally kept a vehicle at their premises and delayed the release of the vehicle the following day. IAA refused to return the vehicle and the Plaintiff was held responsible. Had the IAA vendor verified the VIN number of the vehicle, a wrongful repossession should have been prevented. IAA knew someone would be held liable for the wrongfully repossessed vehicle and any damages made to it. .Instead of correcting the error, IAA walked away without any accountability. IAA had no regards for the Plaintiff and the harm she would suffer as a result of their actions. IAA is responsible for not returning the vehicle that was wrongfully repossessed and making it difficult to retrieve after being made aware of the error. Therefore IAA is liable for interfering with the Plaintiff's employment.

183.   The Defendants and each of them had and have no lawful justification for their tortious interference, were aware of the Plaintiff employment with TMX. The defendant and each of them acted with their own ulterior motive that was detrimental to the Plaintiff and should be liable for the harm the Plaintiff has suffered.

**184.** As a result of the severe, pervasive, and outrageous conduct by the Defendants; the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress and, reputational harm. In addition, the plaintiff experienced nightmares, and fear of leaving her home. Plaintiff lost her desire to have children, feels awful of the color of her skin and being African American.

**185.** Each assertion made by the TMX and employees are in the hands of the defendants and the proof will be subject to discovery.

**186.** WHEREFORE, plaintiff demands judgment against the defendant, jointly and severally, As follows:

**a.**     For compensatory damages in an amount to be proven at trial;

**b.**     For punitive damages in an amount to be proven at trial;

**c.**     For the Plaintiff reasonable attorneys' fees and costs(if applicable)

**d.**     For such other and further relief as this Court deems fair and just.

**Nineteenth Claim for Relief**
**Vicarious Liability and Premises Liability in Violation of O.C.G.A. §51-3-1,**
**O.C.G.A. §51-2-1,**
**(Titlemax of Georgia, Tracy Young, and IAA)**

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

**187.** The Respondeat Superior Doctrine makes the employer liable for the tortious or negligent acts committed by an employee as long as the acts were committed within the scope of the employee's job. This rule is enforceable whether the acts were committed in the employer's presence or not.

**188.** The Plaintiff had an agreement to **work for Tracy Young with conditions based on performance as an at- will employee. The Plaintiff was not directly** employed with IAA; when Tracy Young established a relationship with IAA the plaintiff was subjected to the terms and conditions of that agreement and or contract whether written or spoken.

**189.** Tracy Young and Titlemax were aware of the unlawful actions of his directors and his Human Resource department. He failed to intervene; therefore he knowingly and willingly neglected his duties and shall be liable for the actions of each staff member and violations mentioned in this complaint. TMX employees willingly, intentionally, and recklessly abused their authority with the intent to discriminate, retaliate, harass, humiliate, oppress, reassign, terminate, fraudulent induce, neglect, intimidate, conspire, defraud, omit and misrepresent facts as it relates to the Plaintiff. The parties that engaged in the unlawful acts were acting within the scope of their employment at all times.  Tracy Young's silence does not relieve him of accountability or liability but shows acceptance of abusive and unlawful acts committed by staff members of TMX in prominent positions. If the conduct mentioned is welcomed and acceptable then Tracy Young should not object to being liable for the injuries the Plaintiff has sustained. TMX employees did not conduct any

investigation of the Plaintiff's complaints therefore at fault for neglecting its obligations to prevent unlawful conduct by all employees mentioned in this complaint.

190.   Due to the number of robberies that had taken place over the course of the years, Tracy Young did not ensure every facility was properly equipped with security devices on the outside of the premises knowing that there was a possibility of any human being whether employees, customers, vendors or simply a stranger could or would be subjected to traumatizing events at his business locations. Tracy Young neglected his duty to provide a contingency plan in the event of someone being injured, attacked, or threatened at his place of business.  The Plaintiff has suffered and still suffers from the incident that occurred on TMX premises that endangered her life. Mr. Young is vicariously reliable for his negligence of not ensuring employees are working at a safe location. TMX is liable for all incidents that injured the Plaintiff at his business location. Therefore, Mr. Young is liable for the injuries the Plaintiff has sustained.

191.   TMX is responsible for not making it mandatory for his employees to be properly trained. He knew or should have known that one month of employment is not enough time for store managers to learn the duties and responsibilities of four positions. He also knew or should have known that three months is not enough time to train general managers that do not have experience in the auto industry, finance industry, retail industry, the recovery and collection industry, even if they have managerial experience. This intentional act leads to customers being misled and

increases the possibility of fraud, misrepresentation, deceit, and violations of rules set by the company and those laws governed by local, state, and or federal agencies and/or the government. Therefore, TMX is responsible for the conspiracy that led to the Plaintiff employment with his company, all unlawful and abusive acts against the Plaintiff during her employment, those leading up to her being terminated, and those thereafter. The Plaintiff performance was not being considered as she continued her employment with TMX starting in 2014. TMX cannot justify reassigning the Plaintiff to the worst office after reports supported her claims of being a top performer. TMX cannot justify reassigning or promoting any employee who did not serve at least 6 months in an office while remaining in position. There is no way to determine performance consistency and areas for improvement if the time is not granted to do so. The Plaintiff's employment was agreed upon and based on her performance as a condition of her employment and not for the needs of TMX for the purpose of correcting performance issues of employees who the company knew were not qualified or properly trained for their position. The Plaintiff did not agree to be the person in charge of correcting or fixing performance issues after the offices were severely broken and damaged due to TMX intentional negligence, unfair, and abusive practice. So, therefore Mr. Young is responsible for the decisions he allowed to define his business by those in prominent positions who took advantage of the plaintiff and treated her less than for performing well.

192. The relationship between TMX and IAA appears to create conflict of interest and abusive practices within itself. IAA's involvement with the TMX

accounts gives IAA direct control of the performance results of each entity of TMX.

IAA was aware of its vendor's conduct when he repossessed a vehicle without

verifying the entire VIN. TMX justified the termination of the Plaintiff as a result of

IAA negligence. IAA shall be liable for not following repossession laws, wrongfully

recovering a vehicle, , failing to return the  property, and their willingness to violate

the law that cause the Plaintiff to be subjected to the police being called on her,

defamation of her character, mental anguish, lost of wages, financial hardship, and

wrongful termination. The wrecker driver IAA assigned was acting within the scope

of his employment or contractual agreement with IAA; therefore TMX when he

wrongfully repossessed a vehicle from the Titlebucks premises without verifying 17

digits of the VIN before he transported and delivered the property to IAA of Rincon,

Georgia. IAA received property and shall be liable for its role in unlawful acts and

intentional negligence. IAA has stated their company is not aware of wrecker laws

but they are benefiting from providing the service to TMX and should be held liable

for the harm the Plaintiff has sustained.

**193.**  As a result of the severe and pervasive conduct by TMX, Tracey Young,

and IAA the Plaintiff has suffered damages, including, but not limited to: past and

future lost wages, pain and suffering, inconvenience, mental anguish, difficulty

concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life,

humiliation, emotional distress, and reputational harm, In addition, the plaintiff

experienced nightmares, and fear of leaving her home. Plaintiff lost her desire to have

children, feels awful of the color of her skin and being African American.

**194.** Each assertion made by the TMX and employees are in the hands of the defendants and the proof will be subject to discovery.

**195.** WHEREFORE, plaintiff demands judgment against the defendant, jointly and severally, As follows:

**a.** For compensatory damages in an amount to be proven at trial;

**b.** For punitive damages in an amount to be proven at trial;

**c.** For the Plaintiff reasonable attorneys' fees and costs(if applicable)

**d.** For such other and further relief as this Court deems fair and just.

### Twentieth Claim for Relief
### Fraudulent Inducement, and Deceit in Violation of O.C.G.A. §51-6-1
### (TMX of Georgia, Greg Ludwig, Steve Thomas)

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

**196.** TMX fraudulently induced the Plaintiff from the start of her career. They knew the Plaintiff performance would not play a factor in any decision relating to any promotion and or reassignment. Each promotion of the Plaintiff was based on the motives by TMX senior employees and or directors. [10]For each promotion or reassignment the Plaintiff was told she was being promoted or reassigned, directed what to say on each video for promotion, and when to report to each location. She was given documents to sign and was instructed to have her immediate supervisor sign off on the document. During her entire career she never asked for a promotion

---

[10] The Plaintiff has created a timeline of events that shows TMX business decisions correlating every promotion and or reassignment of the Plaintiff her entire career and will be revealed at the appropriate time.

and believed her performance was being used as the determining factor; however it was solely based on what TMX needed at the time for its financial benefits. The Plaintiff believed this practice was normal but it was indeed a conspiracy TMX forced upon the Plaintiff and enforced practices for their financial gain even if they had to commit acts that were unlawful, deceptive, misleading and, or abusive. Employees were allowed and believed to be trained to take advantage of customers by misleading and/ or omitting information. The Plaintiff was placed in each entity to correct the issue after the damages had been done. The Plaintiff connected with consumers and they did not hesitate making the Plaintiff aware of information that misled them whether by omission or misrepresentation of TMX service. Each and every reassignment or promotion of the Plaintiff she discovered that customers were misled which is a direct result of TMX failure to produce proper training material and full disclosure of the service to its own employees.  The Plaintiff was being reassigned and promoted based on the needs of the company and not her performance. TMX knew the Plaintiff character and physical traits were going to be used for their employment decisions. Titlemax cannot justify a promotion of any employee employed less than 6 months in any position especially if the employee did not have any experience managing an entire entity with experience in the auto industry. The Plaintiff held both and therefore she was being used as the clean up girl. Even if an employee was hired with management and finance experience, without experience in the used auto industry it is impossible to provide TMX service in a truthful and ethical manner unless provided the proper time, information, real life

122

experience, and resources for training. Tracy Young knew or should have known that fraud, deception, omission and misrepresentation of facts would be practices that would grow the business so rapidly.

197.   Defendant induced the Plaintiff by reassigning her to Savannah, Georgia and work based upon the false representation that she would be needed in the Savannah market for 2 weeks, she would have earned plenty of money in the market, the Plaintiff would be trained and promoted to a District Director, and her employment would performance base. She worked hard to prove herself year after year only to be taken advantage of.

198.   Defendant at all times knew that the above representation was untrue, and knew that the only way they could induce the Plaintiff to agree to employment, promotion, and reassignment was by making promises they had no intention to fulfill and or misled her about the terms and conditions of her employment.

199.   The plaintiff solely and whole heartedly relied upon TMX and its employees' representation because it gave her the benefit of knowing that she would earn more income so she would be able to provide for her mother, pay off her property, the ability to invest in the community, and have financial security. The Plaintiff worked so hard because she believed and accepted the information she was told was facts.

200.   TMX and its employees knew at the time that they made these representations to the plaintiff that they did not have the intent of fulfilling any promise made and intentionally, recklessly, maliciously, and consciously did so with

123

the sole purpose to induce the plaintiff based upon the representation made for their own benefit.

**201.**   A reasonable person under no circumstances would have moved 5 hours away from their mother who is 77 years old, leave their residence that would own in less than 5 years, sign a second rental agreement for a living space,  give up an office that they established as the #1 office in the region to be placed in the worst office in the region, or continued employment if they were told they would be used to correct performance issues created by other staff members due to TMX unethical and abusive business practices had TMX and its employees true intention been known.

**202.**   The Defendants and each of them acted with their own ulterior motive that was detrimental to the Plaintiff and should be liable for the harm the Plaintiff has suffered.

**203.**   As a direct and proximate result of the Defendants' deceitful, malicious, reckless, abusive act of fraudulent inducement the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress, and reputational harm. In addition, the Plaintiff experienced nightmares, and fear of leaving her home. Plaintiff lost her desire to have children, feels awful about the color of her skin and being African American.

**204.** Each assertion made by the TMX and employees are in the hands of the defendants and the proof will be subject to discovery.

**205.** WHEREFORE, plaintiff demands judgment against the defendant, jointly and severally, As follows:

**a.** For compensatory damages in an amount to be proven at trial;

**b.** For punitive damages in an amount to be proven at trial;

**c.** For the Plaintiff reasonable attorneys' fees and costs(if applicable)

**d.** For such other and further relief as this Court deems fair and just.

<u>**Twenty First Claim for Relief**</u>
<u>**Fraud by Misrepresentation O.C.G.A. § 51-6-2**</u>
<u>**(Titlemax of Georgia, Steve Thomas, Greg Ludwig)**</u>

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.**

**206.** TMX had an employment agreement with the plaintiff as an at- will employee with conditions that would be based on her performance. The Plaintiff's performance was not the determining factor when TMX upper management associate(s), senior associate(s), and or human resource associate(s) made decisions relating to the Plaintiff's employment for any and all promotions and or reassignments. The Plaintiff's employment was determined by a senior team member according to Ms. Allison during the hiring process. The Plaintiff's employment timeline correlates with changes, practices, and new developments TMX was testing,

125

implementing and, or executing for financial gains that was not related to the common practice of someone working in the pawn industry. The Plaintiff race, color, special skills, character traits, disability, and gender were considered when the Defendants conspired against the Plaintiff in terms of her employment. The Defendants misrepresented the services the Plaintiff was hired to provide. TMX used one of their locations as a test office for a new department, then terminated and rehired her about 30 days later. She was reassigned to an office that had a higher customer base of Hispanics when TMX decided to have customers to identify their race and added a misleading question as part of the application. The special question was directly related to what would be TMX's new venture. The Plaintiff was placed in offices on a distinct side of town that TMX knew the probability of repossessing good to excellent vehicles were higher because of their misrepresentation and intent to supply inventory for Autocash; TMX used car dealership. After the Plaintiff became Store Manager, TMX used car dealership closed shortly afterwards. . The branch manager from the used car dealership was employed and placed in a TMX storefront. The Plaintiff's work and performance was used to evaluate the former branch manager of the used car dealership which led to him being assigned a district for his new role as District Director which is referenced above.

207. The Defendants cannot find justification for reassigning the Plaintiff 10 times during her employment. Specifically five times before and five times after becoming general manager. The Defendants cannot justify the Plaintiff start date February 10, 2014 in Columbus and her start date in Savannah February 10, 2020.

TMX cannot justify the conspiracy against the Plaintiff in two different markets, with two different District Directors, and replaced by two Caucasians. Other employees were allowed to stay at their same location for many years or until their relationship ended with TMX. Titlemax knew that they did not intend to make employment advancement that would have been based on the Plaintiff's performance.

**208.** The Defendant at all times knew that the above representation was misleading because they knew that there was an ulterior motive for each decision made regarding any and all promotions and or reassignment. The defendant intended to induce the plaintiff to act in reliance on the representations.

**209.** The Plaintiff relied upon the Defendant's misrepresentation. She truly believed that her employment with TMX was performance based and she worked extremely hard on the clock and off the clock to meet TMX expectations year after year. She moved and stayed in Savannah because she relied upon the statements of TMX, Greg Ludwig, and Steve Thomas.

**210.** Defendant knew at the time that they made the representations to the plaintiff with the intent to defraud the plaintiff for their own motive and financial satisfaction.

**211.** The Plaintiff was unaware of the misrepresentations of her employment and relied upon the defendant's representations.

**212.** A reasonable person would have accepted the defendant's misrepresentation as facts without conducting investigation. The Defendant knew of

Plaintiff's strength and weaknesses when each of them conspired to take advantage of her when they made the representations.

213.   As a result of the severe and pervasive conduct by TMX, Tracey Young, Steve Thomas, and Greg Ludwig the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells, loss of enjoyment of life, humiliation, emotional distress, reputational harm, In addition, the plaintiff experienced nightmares, fear of leaving her home. Plaintiff lost her desire to have children, feels awful of the color of her skin and being African American

214.   WHEREFORE, plaintiff demands judgment against the defendant, jointly and severally, As follows:

a.      For compensatory damages in an amount to be proven at trial;

b.      For punitive damages in an amount to be proven at trial;

c.      For the Plaintiff reasonable attorneys' fees and costs(if applicable)

d.      For such other and further relief as this Court deems fair and just.

### Twenty Second Claim for Relief
### Negligence Violation of O.C.G.A. 51-12-33
### (Jason Broce, Clay Alexander, Nathaniel Anderson, Erin Fritts, Greg Ludwig, Steve Thomas, Tracy Young, TMX, and IAA)

Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein

**215.** TMX of Georgia had a duty of care to ensure the plaintiff was working in a safe facility. In the past, there have been many robberies and the company failed to make changes to ensure the safety of employees and customers. TMX knew or should have known that cameras should have been installed on the exterior of each building in the event of something happening there that could or would cause harm to their employees and or customers.

**216.** Greg, Steve, and Tracey Young neglected their duties to ensure Titlemax of Skidaway Road Savannah, GA was a safe place for the plaintiff to work free of discrimination, retaliation, harassment, and intimidation. They carried out unlawful acts a reasonable person would not expect by their supervisor(s), the Human Resource associates or the company itself. After reaching out for help many times in the month of September the defendant's intentionally neglected their duty to ensure that the facility and premises were located at 2800 Skidaway Road, Savannah, GA. On Oct 6, 2020 the Plaintiff was injured at TMX #2 of Savannah, Georgia. The Defendants conspired to enforce an unfit for duty scheme instead of taking accountability for their willful negligence. The Defendant's ensured a Caucasian female had the proper security equipment installed after the Plaintiff's life was endangered. TMX could not provide a lawful reason as to why the same measures were not taken to protect the Plaintiff and the other African American working at the location.

**217.** Nathaniel Anderson neglected his responsibility to ensure a proper investigation and due process was given to the Plaintiff before he made a decision

that he knew would harm the Plaintiff. Nathaniel Anderson's action cannot be justified.

**218.** Tracy Young knew or should have known each of the facilities that were established and or operating as Titlemax of Georgia should have been equipped with security devices to ensure the safety of all relationships and partnerships formed with his organization. He should have known that it was unsafe to operate a business that allows thru traffic behind the building without the proper security equipment. Because of the nature of business at all times employees should be able to know what is happening on the premises while they are working on the inside of the building due to the nature of TMX business, the history of traumatizing events at several business locations, and because each person's life is valuable. Tracy Young failed to take precautionary measures to ensure the safety of the Plaintiff or provide a contingency plan in the event her life was endangered while performing her duties at his business location.  He has also neglected his duty to ensure the Plaintiff was not retaliated, harassed, and discriminated against for reporting the activity that traumatized her, for taking a leave of absence, and made mockery of because of the event of on October 6, 2020 after he was made aware.

**219.** The staff members of TMX Human Resource Department neglected their duties to ensure the Plaintiff workplace was free of discrimination, retaliation, harassment, bullying, intimidation, and other abusive and unlawful acts. Each of them aided and abetted, participated and or supported the others unlawful and abusive acts. No one employee acted alone while executing the continuous patterns

of unlawful and abusive acts. Each of them violated the Plaintiff's right of due process. Each of them conspired, malicious, outrageous, and reckless acts were intended to harm and injure the Plaintiff.

**220.**   The plaintiff was unsuccessful when she requested to meet on many occasions to discuss her concerns. Each time the Plaintiff made a request it was ignored. Instead, the Defendants intentionally harassed and bullied the plaintiff till the day she was escorted off the premises after being wrongfully terminated.

**221.**   Insurance Auto Auction is responsible for the events that led to wrongful repossession causing the Plaintiff to be held responsible for something she did not do. IAA neglected to give their driver the V.I.N number to verify the vehicle that was delivered to their location on June 9, 2021. IAA refused to return the property and they are liable for their negligence resulting in wrongful termination, pain, and suffering the Plaintiff has experienced.

**222.**   As a direct and proximate result of the negligence by the TMX and IAA, by and through its employees, and staff members and the Human Resource and Benefit Department, the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, difficulty concentrating, anxiety, disassociation, crying spells,  loss of enjoyment of life, humiliation, emotional distress, reputational harm, In addition, the plaintiff experienced nightmares, fear of leaving her home. Plaintiff lost her desire to have children, and feels awful for being an African American female.

**223.** The defendant and each of them acted with their own ulterior motive that was detrimental to the Plaintiff and should be liable for the harm the Plaintiff has suffered.

**224.** Each assertion made by the TMX and employees are in the hands of the defendants and the proof will be subject to discovery.

**225.** WHEREFORE, plaintiff demands judgment against the defendant, jointly and severally, as follows:

a.    For compensatory damages in an amount to be proven at trial;

b.    For punitive damages in an amount to be proven at trial;

c.    For the Plaintiff reasonable attorneys' fees and costs(if applicable)

d.    For such other and further relief as this Court deems fair and just.

### Twenty Third Claims for Relief
### Civil Conspiracy in Violation of O.C.G.A. §16-4-8
### TMX, Steve Thomas, Greg Ludwig, Carley Bragg, Kelly Cummings, Erin Fritts, Doe 1-5

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein**

**226.** Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, entered into an agreement under Titlemax and Tracy Young agreed to or with knowingly minds to accomplish that goal through one or more unlawful acts of fraud, collusion, misrepresentation, as alleged. The Plaintiff suffered harm as a result of Defendants' conduct and conspiracy.

132

**227.** Defendants of Titlemax had an independent duty to the Plaintiff not to engage in conduct as alleged in the above paragraphs and not to conspire to commit acts that violate the Plaintiff's rights. The Defendants of TMX

**228.** The Defendants of Titlemax consciously, willingly, intentionally, maliciously, and recklessly conspired to use the Plaintiff for their own financial benefit by using methods of misrepresentation, fraud by inducement, power harassment, omission of facts and intentional negligence. From the start of the plaintiff's career she was targeted and subjected to work conditions that violated labor laws, business ethics laws, and her civil rights. Titlemax cannot claim a performance based company when the Plaintiff was being placed in the worst offices for meeting or exceeding expectations. Human Resource, regional and district directors were directly involved in all acts of conspiracy.

**229.** The Defendants and each of them conspired to commit a pattern of fraud, defamation, misrepresentation, discrimination, retaliation, harassment, and or negligence on behalf of Titlemax of Georgia. Titlemax of Georgia has engaged in a series of schemes and conspiracies. Each Defendant should be held accountable for the unlawful acts committed.

**230.** The defendant and each of them acted with their own ulterior motive that was detrimental to the Plaintiff and should be liable for the harm the Plaintiff has suffered.

**231.** As a direct and proximate consequence of the Defendants' conspiracy, Plaintiff has been injured and caused the Plaintiff to suffer compensatory damages.

**232.** Defendants' conduct as alleged was done for their own individual interests, and was willful, intentional, malicious, deliberate, and oppressive, and done with conscious and with disregard of the consequences and with intent to harm. The Plaintiff is entitled to an award of punitive damages from Defendants and each of them and sufficient to punish, penalize and deter the Defendants from engaging in such conduct in the future.

**233.** As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been damaged in a sum according to proof and for attorney's fees, costs, and interest according to proof.

**234.** WHEREFORE, plaintiff demands judgment against the defendant, jointly and severally, as follows:

**a.**     For compensatory damages in an amount to be proven at trial;

**b.**     For punitive damages in an amount to be proven at trial;

**c.**     For the Plaintiff reasonable attorneys' fees and costs(if applicable)

**d.**     For such other and further relief as this Court deems fair and just.

### _Twenty Fourth Claim for Relief_
### _Due Process in Violation under 42 U.S.C. § 1983)_
### _(TMX, Nathaniel Anderson, Erin Fritts, Steve Thomas, Greg Ludwig, and Doe 1-5)_

**Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein**

**235.** The Plaintiff had an expectation of continued employment with TMX although she was employed as an art will employee. TMX abruptly ended their

relationship with the Plaintiff without a notice and the right to be heard. TMX accused the Plaintiff of violating a policy that did not exist. There was not a policy that held the Plaintiff responsible for all errors of white employees or responsible for emails sent by an employee from their own personal email address, or a policy that stated the Plaintiff would be held responsible for unlawful acts by a third party.

236. Nathaniel Anderson, Greg Ludwig, Erin Fritts, Steve Thomas, and TMX deprived the Plaintiff of her constitutional right to work without due process.

237. The termination of the Plaintiff by TMX 2 hours before the close of business and the deprivation of her constitutional right to due process was an act of conspiracy and retaliation. It was done recklessly, negligently, intentionally, ill will and/or with no regards to the Plaintiff federally protected rights.

238. The termination of the Plaintiff without notice for allegedly violating policy and the opportunity for her to be heard is a violation of her due process rights pursuant to 42 U.S.C. § 1983.

239. WHEREFORE, plaintiff demands judgment against the defendant, jointly and severally, as follows:

a. For compensatory damages in an amount to be proven at trial;

b. For punitive damages in an amount to be proven at trial;

c. For the Plaintiff reasonable attorneys' fees and costs(if applicable)

d. For such other and further relief as this Court deems fair and just.

### *Question to the Court*

Plaintiff restates, re-alleges, and incorporates by reference all other Paragraphs of this Complaint as if fully stated herein.

240.  TMX business practices are unfair, unlawful, and unethical. TMX has presented a one sided arbitration agreement that is procedurally and substantively unconscionable. TMX is attempting to use the agreement as a weapon. TMX and its attorney knowingly and willingly gave false information to EEOC, omitted important information, and asserted information that cannot be proven with the intent to mislead the EEOC, have the Plaintiff complaint dismissed, and to stereotype the Plaintiff because she is an African American female. The Plaintiff has never seen or reviewed the document until 2022. It has a computer generated signature that the Plaintiff did not sign and cannot be proven that the Plaintiff signed. The Plaintiff did not sign any documents when she returned to work March 2015 after being terminated by TMX for one month. The Plaintiff was not a new employee after being employed for 1 year and at no point during the Plaintiff career did any employee of TMX present, review, discuss, mention, or disclose this document. The Plaintiff returned to work the same day TMX had to have placed the electronic signature on the document therefore it could not have been negotiated or discussed with an attorney. The plaintiff did not have to go through the 30 minute on boarding, she only submitted driver license and auto insurance.

241.  TMX has and definitely had the ability to backdate their system; and has done so in the past in 2015, therefore someone other than the Plaintiff signed this agreement. At no point did HR provide the Plaintiff with this document nor did the Plaintiff

have access to it. After reviewing this document the Plaintiff does not know exactly what the document is for, lacks complete understanding of agreement, and this is the first time the plaintiff has heard of an arbitration; which led the Plaintiff to research. From doing a little research the Plaintiff's understand that anyone signing the agreement is agreeing to allow TMX to violate their rights legally. If so this agreement should be held unlawful and a complete insult to every employee. Also, the Plaintiff does not believe the document is legal and asks the court to prevent TMX from generating such documents in the future intended for employees to sign over and give up their civil and constitutional rights that are protected by the laws of the land. The Plaintiff would never sign anything that would allow someone to discriminate against her because of her race and color. The Plaintiff is from Tuskegee, AL; the birthplace of Rosa Parks. She learned how to drive on the Tuskegee Airman landing strip, and was one of the last babies born in 1987 at John Andrews's hospital in Tuskegee where syphilis was injected into patients. One thing the Plaintiff was taught growing up in a historic black community was that she would face discrimination due to her race and the color of her skin. Like those before her she also would have to stand up for her rights because they would be violated at some point in her life. This is not an agreement the Plaintiff would not have signed for a million dollars. It specifically says race discrimination and goes against what she has been taught her entire life growing up in Tuskegee, AL.

242. At the appropriate time, the Plaintiff shall ask the court for understanding of the agreement, the purpose and legality of the agreement, the effects it has on the

complaints at hand, and does the agreement allow Titlemax to knowingly and willingly give false information to a federal agency?  TMX attorney said he will compel it and the Plaintiff believes in effort to deter her from seeking relief, change so other employees of Titlemax would not experience what the plaintiff has experienced during her employment, and to run away from the non factual statements they have alleged in their position statement that they know without a doubt can't be proven.

### *Injunctive and Declaratory Relief*

**WHEREFORE, Plaintiff Cordelius Brown prays that the Court grant the following relief**

If the court does not grant injunctive relief future employees of Titlemax will suffer and no one should be abused the way the Plaintiff was abused. The plaintiff will be harmed if relief is not granted.  There is no law available to redress the wrongs addressed in this complaint and no other employee should ever have to go through what the Plaintiff endured. It's time for a change. Change is the only way.

a.      For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful and the Defendants to deny allegation.

b.      Plaintiff requests that this Court issue a preliminary injunction and permanently prohibit Defendants from continuing to fail to pay all wages, including bonuses owed to former-employees, changing the pay rate of General manager, and classifying general manager  as exempt or nonexempt employees at their own discretion.

c.   The Termination of Carley Bragg and all Human Resource associates mentioned in this complaint and replaced with at least three graduates of HBCU regardless of race, gender, disability, national origin or sexual orientation.

d.   Greg Ludwig demoted to Store Manager for the rest of his employment with TMX or terminated, Kelly Cummings demoted to Customer Service Representative for a 1 year period or terminated, Steve Thomas demoted to General Manager position for a 3 year period or terminated, Nathaniel Anderson reassign to a different Region or terminated, Tabitha and Rachel demoted to Assistant Store Manager for a 2 year period or terminated.

e.   Order the Defendants of TMX Implement an Action Plan that allows the advancements and reassignments of workers based on the individual's actual performance or ban TMX from using the phrase "performance based" in all areas of business including the hiring process.

f.   Order Defendant IAA to stop wrecker service activities for TMX completely.

g.   Order Defendant TMX to allow all employees lunch breaks everyday and a day off or do not allow relief for any employee including Human Resource, Directors, etc.

h.   Order the Defendant TMX to use an outside source to investigate all civil rights and labor law employment complaints.

i.    Order the Defendant to implement a system for employees to report unlawful conduct of senior officials of HR representatives directly to Tracy Young or the company counsel.

j.    Order the Defendant TMX to return the Plaintiff faith rock and all of her training she created that was deleted by Greg Ludwig that was not company approved or to compensate her for the destruction of materials.

k.    Order the Defendant TMX to develop and implement guidelines and policies to ensure due process for all employees, develop and implement extended training programs for underperforming general managers.

l.    Order the Defendant TMX to develop 3 month training for Store Managers and 5 month training for General Managers.

m.    Order the Defendant TMX to offer and or conduct an exit interview of all employees.

n.    Order the Defendants TMX to develop a mandatory grading/rating system for employees to grade/rate their Directors every 6 months and reveal the grade to all employees under their leadership in effort to develop a culture that truly represents the core values of the company and to implement extended or additional training and resources to correct areas the Directors that may result in need improvements. Directors should not be written up or terminated based on the result of their grades.

o.    Order the Defendant TMX to implement a General Support Department for all employees to have access to an internal counselor for support and review

employee's medical records before diagnosing any employee as suicidal or a threat to other employees. Involve law enforcement, medical doctor, and the emergency contact for all concerns pertaining to the life of a human being.

p.   Order the Defendant TMX to refrain from terminating an employee near the close of business and allow the deciding official identity to be known during termination and ensure, and cameras are placed at the outside rear of each facility.

q.   Order Defendants of TMX to revise and implement appropriate and effective measures designed to prevent discrimination, harassment, and retaliation, including but not limited to only policies and training for employees and managers;

r.   Order Defendant TMX to revise or develop appropriate and effective measures to receive complaints of discrimination, harassment, and retaliation.

s.   Order the Defendants TMX Close all accounts and repay customer that opened accounts between 2018 and February 2020 at TMX#3 of Columbus and refrain from doing future business at any location that is not properly licensed.

t.   Order the Defendant TMX give a public apology to customers and the Plaintiff.

u.   Enjoin Defendant TMX from subjecting employees to discrimination and harassment based protected class and retaliating against employees who engage in activity protected under Title VII, ADA, and FMLA.

### ***Prayer for Relief***

1. For lost wages, penalties and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

2. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest

3. For compensatory damages for the Plaintiff emotional pain and suffering, in an amount to be proven at trial;

4. For punitive damages in an amount to be proven at trial

5. Award Plaintiff actual and compensatory damages to compensate the Plaintiff for injuries and losses caused by each person in an amount to be proven at trial.

6. For the Plaintiff reasonable attorneys' fees and costs(if applicable)

7. For special and general damages

8. For such other and further relief as the Court deems necessary and proper in the public interest.

9. For such other and further relief as this Court deems fair, and just.

10. TMX owes me thousands of dollars and I request that the court demand Titlemax to pay all of the 401k benefits she is entitled to with interest


*The Plaintiff apologizes for all typos and errors in the Complaint. It is very difficult for her to see words clearly due to an eye condition. She did the best she could. The Plaintiff requests and pleads to the Court to grant mercy, compassion, understanding and patience.*

**Plaintiff has stated, alleged, and incorporated all Paragraphs of this Complaint fully**

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my

knowledge, information, and belief that this complaint: (1) is not being presented for an

improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing

law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3)

the factual contentions have      evidentiary support or, if specifically so identified, will

likely have evidentiary support after a reasonable opportunity for further investigation or

discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted,

Cordelius Brown

By: _Cardelius Brown_

Cordelius Brown
12012 Middleground Road
Apt. B198
Savannah, GA 31419
(706) 464-1105

Dated: _April 6, 2022_

143

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | **Cordelius Brown**<br>**12012 MIDDLEGROUND ROAD, Apt B198**<br>**Savannah, GA 31406** | From: | **Savannah Local Office**<br>**7391 Hodgson Memorial Drive**<br>**Suite 200**<br>**Savannah, GA 31406** |

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **415-2021-00727** | **Chantel Tucker,**<br>**Investigator** | **(912) 920-4266** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

Omayra Padilla
Digitally signed by Omayra
Padilla
Date: 2022.01.14 14:41:31
-05'00'

1/14/2022

Enclosures(s)

**Omayra Padilla,**
**Director**

*(Date Issued)*

cc: **Alexandra Tropea**
**Director Employment Counsel**
**TMX Finance Family of Companies**
**15 BULL ST**
**STE 200**
**Savannah, GA 31401**

**Tim McConnell**
**Bass, Berry & Sims PLC**
**900 S GAY ST**
**STE 1700**
**Knoxville, TN 37902**