# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| CORDELIUS BROWN )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>TitleMax of Georgia, Inc., )<br>Insurance Auto Auction of )<br>Savannah, Greg Ludwig, Frank )<br>Chisholm known as Kip, Steve )<br>Thomas, Nathaniel Anderson, Erin )<br>Fritts, Carley Bragg, Jason Broce, )<br>Clay Alexander real name Clayton )<br>Hall known as Clay, Kelly )<br>Cummings, Tracy Young, and )<br>Doe 1-5, )<br>)<br>*Defendants*. ) | Case Action File No.<br>4:22-cv-00082-WTM-CLR |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR EMERGENCY HEARING OR RULING IN SUPPORT OF REQUEST FOR TEMPORARY RESTRAINING ORDER AND RELIEF

Defendants TitleMax of Georgia, Inc. ("TitleMax"), Insurance Auto Auctions, Inc. incorrectly identified as Insurance Auto Auction of Savannah ("IAA"), Greg Ludwig, Frank "Kip" Chisolm, Steve Thomas, Nathanial Anderson, Erin Fritts, Carley Bragg, Jason Broce, Clay Hall, Kellie Cummings and Tracy Young (collectively "Defendants") respectfully submit this Opposition to Plaintiff's Motion For Emergency Hearing or Ruling in Support of Request for Temporary Restraining Order and Relief (ECF No. 47, filed Aug. 23, 2022, hereinafter

1

"Plaintiff's Motion") and the memorandum of law and exhibits filed therewith (ECF No. 48, filed Aug. 23, 2022), and states the following in support of their opposition:

## I. INTRODUCTION

The incoherent nature of Plaintiff's Motion makes it difficult to respond to, however, what is clear is that Plaintiff's Motion is a continuation of her campaign of harassment of Defendants and is duplicative of her prior Request for Temporary Restraining Order (ECF No. 38, filed July 27, 2022, hereinafter "TRO Request"). As with her TRO Request, Plaintiff fails to present any facts to support her Motion. She also fails to specify any grounds by which she is entitled to the unusual relief she seeks, which would include preventing Defendants from contacting any witness Plaintiff chooses to identify as a witness or possible witness in this case, "monitoring" each of the Defendants' computers and allowing Plaintiff discovery even though Defendants have moved to compel this matter to arbitration pursuant to the parties' written Arbitration Agreements.

Plaintiff moves for emergency relief pursuant to Federal Rule of Civil Procedure 65 and 15 U.S.C. §§ 25 and 4, that latter of which pertain to remedies for antitrust violations – claims that are not at issue in this case.

Plaintiff should not be allowed to continue to abuse the judicial process in this manner and harass Defendants in bad faith. While Defendants deny the allegations in Plaintiff's Motion, Defendants generally agree that a hearing is necessary to put

an end to Plaintiff's harassing conduct. To that end, Defendants would ask the Court to schedule a pre-hearing conference to first address their outstanding Motion to Compel Arbitration (ECF No. 25, filed June 21, 2022) and requests for sanctions against Plaintiff (*see* ECF No. 34, filed July 19, 2022; ECF No. 42, filed Aug. 10, 2022) for her continued bad faith conduct in this matter.

## II.   ARGUMENT

### A. Sanctions are Warranted for Plaintiff's Bad Faith Conduct in Bringing this Motion

Plaintiff's Motion is duplicative of her TRO Request and fails to raise any new issues for this Court to consider. The Motion is styled as a request for a hearing, but it alternatively seeks a ruling on her TRO Request and is "supported" by a 19-page Memorandum (ECF No. 48, filed Aug. 23, 2022) setting out the same baseless arguments set forth in her TRO Request, a new declaration, and attaching 10 emails and numerous text messages – all of which are irrelevant to Plaintiff's Motion. Therefore, Plaintiff's Motion is a sham motion and can only be construed as a further attempt to harass Defendants and drive up the cost of litigating this matter.

As with her TRO Request, Plaintiff fails to provide any evidence or legal ground to stand upon for her Motion. To wit, Plaintiff moves for emergency relief pursuant to 15 U.S.C. §§ 25 and 4, which pertain to remedies for antitrust violations, which are not claims at issue in this case.

Plaintiff's vindictive efforts to bombard Defendants with blatantly false, unsubstantiated and irrelevant motions have complicated this simple, single-plaintiff employment dispute and are a waste of judicial resources. Defendants acknowledge and agree that a hearing should be held in this matter to address repeated wrongful conduct – namely, Plaintiff's frivolous request for an emergency hearing. Although Defendants dispute the substance of Plaintiff's Motion, Defendants agree that a pre-conference hearing would help put an end to Plaintiff's several frivolous filings.

Defendants further request sanctions against Plaintiff in the amount of their attorneys' fees in preparing this response and that the Court dismiss this case against all Defendants as frivolous and malicious, pursuant to the Court's power under 28 U.S.C. § 1915. Section § 1915 empowers the court to dismiss a complaint if, after granting *in forma pauperis* permission, the court later determines the action is frivolous or malicious or fails to state a claim upon which relief may be granted. *See Camp v. Oliver*, 798 F.2d 434, 437 (11th Cir. 1986) (explaining that proceeding *in forma pauperis* is a privilege, not a right, and permission to so proceed is committed to the sound discretion of the court). Alternatively, Defendants request an order from the Court preventing Plaintiff from filing any additional document in this matter without Court approval. *See Daker v. Ward*, 999 F.3d 1300, 1303 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 2716 (2022).

**B. Plaintiff's Motion Fails for the Same Reasons Her TRO Request Fails**

To obtain a temporary restraining order, a party must demonstrate:

1) that there is a substantial likelihood of success on the merits;

2) that irreparable injury will be suffered if the relief is not granted;

3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and

4) that the entry of the relief would serve the public interest.

*Favors-Morrell v. United States*, No. CV 215-19, 2015 WL 12696116, at *1 (S.D. Ga. Feb. 18, 2015) (citing *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005)). Both temporary restraining orders and preliminary injunctions are extraordinary remedies that are "not to be granted unless the movant clearly establishes the 'burden of persuasion' as to each of the four prerequisites." *Schmitt v. Reimer*, No. CV 110-102, 2010 WL 3585187, at *1 (S.D. Ga. Sept. 14, 2010) (citing *Redford v. Gwinnett Jud. Cir.*, 350 Fed. Appx. 341, 345 (11th Cir. 2009)).

Plaintiff's Motion falls dramatically short of meeting the four prerequisites for a temporary restraining order. Indeed, Plaintiff's Motion is merely a recitation of the prerequisites for obtaining a temporary restraining order without any factual or legal support for her claims, and her supporting documents are plagued by the same deficiencies as her Motion. In truth, Plaintiff's Motion and supporting papers are a restatement of the same baseless claims raised in her TRO Request, which Defendants have already responded to (*see* ECF No. 41, Aug. 10, 2022) and which response Defendants incorporate herein.

## C. <u>Plaintiff Fails to Provide Any Evidence to Support Her Claims</u>

As with her TRO Request, Plaintiff's Motion contains wild speculations and conclusions, such as her allegation that Defendants attempted to harass Ms. Garcia by purportedly contacting her through a recruiter on Indeed to ask whether she would be interested in setting up a call to chat about open positions[1]; her claim that Defendants destroyed or disposed of "relevant material," without evidence that any Defendant actually destroyed or disposed of any documents pertinent to this matter[2]; and her claim that TitleMax might take "adverse action" against one of its employees without any facts to support such a specious claim.

Implausible allegations are insufficient to meet her burden of persuasion for a preliminary injunction. *See Redford*, 350 Fed. Appx. at 345; *Schmitt*, No. CV 110-102, 2010 WL 3585187 (dismissing plaintiff's motion and complaint where plaintiff's allegations in his complaint were largely conclusory and seemingly implausible).

Plaintiff's newly filed "evidence" includes a **third** Declaration of Joselle Garcia (ECF No. 48 at 4-5, 21-24), in which she alleges that an unidentified Defendant came to her current place of employment but that she did not have contact

---

[1] Defendant TitleMax denies this claim.
[2] The time for discovery has not yet arisen, so Plaintiff cannot possibly argue that she has been denied documents in this matter.

with the person. (*Id.* at 23.) Before addressing the latest set of nonsense from Ms. Garcia, it is important to keep in mind that Ms. Garcia has absolutely nothing to do with Plaintiff's alleged claims or her separation from employment. Yet, despite her utter lack of any relevancy to this case, Plaintiff has again inserted her into Plaintiff's never-ending and ever-changing set of allegations. In her latest motion, Plaintiff and Ms. Garcia fail to definitively identify where Ms. Garcia works, which Defendant purportedly "harassed" Ms. Garcia at work, how she was purportedly harassed and how that constitutes irreparable harm to Plaintiff. Remarkably, though, Plaintiff speculates that she "believes" (but does not know) that Greg Ludwig went to Ms. Garcia's place of employment. (*Id.* at 5.) Moreover, even if this latest set of fantastic allegations were even partially true, Plaintiff's claims with respect to Ms. Garcia are not enough to show harassment or witness intimidation, as alleged, or to show that Plaintiff faces irreparable harm even if Mr. Ludwig did happen to visit Mr. Garcia's workplace but had no interaction with her there.

    Ms. Garcia further alleges a person named "Matthew Jackson" contacted her about a job with TitleMax. (*Id.* at 22.) As an initial point, Defendant does not employ a recruiter named "Matthew Jackson." As such, whoever has been contacting Ms. Garcia does not work for Defendant TitleMax, and the Company denies that it offered employment to Ms. Garcia after she filed a declaration in this matter or seeks to prevent Ms. Garcia from testifying as a witness with respect to

matters with which she has relevant information in this case.  Ms. Garcia testified that she "chuckled" when she received the message from "Matthew Jackson" and then had "an uneasy feeling" about TitleMax.  (*Id.*)  However, she admitted, "I have not reached out to Titlemax since they terminated me and have no desire to return to work for titlemax [sic]."  (*Id.*)  Thus, Ms. Garcia's own sworn testimony is that she is not going back to work for TitleMax, and Plaintiff's concern that she will be unable to contact Ms. Garcia if she is re-hired by TitleMax is unfounded.

Plaintiff has not produced any new evidence to support her claim that a third party has been "adversely affected" by being identified by Plaintiff as a witness or potential witness in this lawsuit, as alleged.  Therefore, her request for a temporary protective order to prevent third parties from potentially being "adversely affected" in the future is without merit.[3]

Plaintiff has not provided a single fact to support her speculative claim that the Defendants have destroyed documents relevant to this case.  Without any proof to back up her claims, Plaintiff alleges that Defendants erased evidence.  (*See* ECF No. 48 at 2, 17-19.)  She also alleges computers where "wiped out" "as ordered by

---

[3] Plaintiff's discussion at pages 6-9 of her Memorandum (ECF No. 48) is incomprehensible, lacks relevance to this case and appears to be one of Plaintiff's concocted conspiracy theories with no factual basis.  (*See e.g.*, ECF No. 48 at 9, wherein Plaintiff states, "Trellis does not have anything to do with any matters brought before the court…" but then states in the same paragraph, "Trellis' sudden relocation to Savannah has everything to do with the Plaintiff [sic] case.")

the CFPB" as a result of a 2016 investigation. (*Id.* at 13, 15.) Assuming for the sake of argument the latter claim was true (which it is not), Plaintiff can hardly argue that TitleMax's compliance with a Consumer Financial Protection Bureau order to delete computer data ***six (6) years before this lawsuit commenced*** constituted intentional destruction of documents in this case by Defendants.[4]  Defendants cannot be expected to respond to such baseless, vague, ambiguous and speculative allegations. Plaintiff appears to be frustrated that she has not been able to obtain discovery in this matter.  However, her frustration is not grounds to allow Plaintiff the sweeping discovery and unusual request to "monitor" Defendants' computers, nor is it proper while Defendants' Motion to Compel Arbitration is pending.

Finally, references to matters and parties irrelevant to this case throughout Plaintiff's Motion should be disregarded.  This includes, but is not limited to, claims related to non-parties Trellis Howard and his girlfriend, statements purportedly made by Tracy Young, any CFPB investigation, and disparaging emails Plaintiff sent to her local city officials and the White House.  Plaintiff admits that Mr. Howard "does not have anything to do with any matters brought before the court."  (Plaintiff's Motion at 9.)  Plaintiff has failed to provide evidence to show that these claims are true or that they are relevant to the present motion.

---

[4] Plaintiff contradicts herself at ECF No. 48 at 17 when she states "the CFPB ordered the Defendant to retain documents."

### D. Plaintiff Cannot Show a Likelihood of Success on the Merits of Her Claims

Plaintiff's Motion is another attempt to overcome the lack of merit of her case. Plaintiff is unlikely to succeed on the merits of her lawsuit (in part) because it lacks any factual or legal support, just as the claims in her Motion lack sufficient factual or legal support. Because Defendants have moved to compel this case to arbitration and do not desire to litigate their claims in this forum, Defendants reserve their substantive attacks on Plaintiff's case for the arbitrator. However, Defendants would point out, as Judge Ray did in his May 13, 2022 Order (ECF No. 7), that Plaintiff's Complaint is a shotgun pleading that "contains at least 90 factual allegations, some of which are wholly conclusory," and it "fails to articulate against whom each specific claim is made, and what factual allegations support each specific claim." (*Id.* at 5.) Although Plaintiff amended her Complaint on April 27, 2022 (ECF No. 6), the 153-page First Amended Complaint includes 26 causes of action against 12 Defendants and suffers from the same deficiencies Judge Ray noted in his prior Order.

### E. Plaintiff Has Not Shown She Will Suffer Irreparable Harm

Plaintiff has not shown that she will suffer from any harm if the temporary restraining order is not issued. Plaintiff's claims center around harm she concludes (without factual support) will harm third parties who are not parties to this action.

Not only does Plaintiff lack standing to request the relief that she seeks on behalf of the third parties, but her entire argument lacks basis in any logic whatsoever.

As the Eleventh Circuit explained in *Northeastern Florida Chapter of the Association of General Contractors v. City of Jacksonville*, a showing of irreparable injury is "the *sine qua non* of injunctive relief." 896 F.2d 1283, 1285 (11th Cir. 1990) (internal quotation omitted). The asserted irreparable injury "must be neither remote nor speculative, but actual and imminent." *Id.* (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989)); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (holding that "a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury").

In this case, Plaintiff has not alleged any actual and imminent risk of harm. Rather, she speculates that if her request for a temporary restraining order is not granted, she will be unable to contact witnesses, documents might be destroyed, and third parties who are not parties to this action might be adversely affected. This is not enough to show irreparable harm to Plaintiff.

For example, Plaintiff speculates that *if* TitleMax were to hire Ms. Garcia, she would be unable to contact her as a witness, but TitleMax has not offered employment to Ms. Garcia, nor does it seek to employ Ms. Garcia. Moreover,

11

neither TitleMax nor any other Defendant has tried to prevent Plaintiff from contacting Ms. Garcia as evidenced by the multiple declarations she has obtained from her.

Plaintiff further speculates that TitleMax may take "adverse action" against people she decides to identify as a witness or potential witness, but she does not identify any specific "adverse action" taken against a TitleMax employee or show how that would pose a risk of actual and imminent risk of harm to her. Plaintiff goes so far with her conjecture to state, "If anything happens to Trellis relating to his employment it is solely because the Plaintiff mentioned his name and information that she has shared and may share in filings." It is wholly unclear what Plaintiff means by this statement and it is highly conjectural. Moreover, neither this nor any of Plaintiff's other conjectural claims shows how the hypothetical conduct would constitute an actual and imminent risk of harm to Plaintiff.

On the other hand, Defendants would be immediately harmed if the temporary protective order sought was issued because they would be prevented from contacting fact witnesses in this case simply because Plaintiff names a person in one of her groundless filings. With Plaintiff's history of filing unsupported claims, Defendants would fully expect Plaintiff to name every person with relevant facts in this matter in an attempt to deprive Defendants of access to key witnesses.

Moreover, Plaintiff requests that the Court order each of the 12 Defendants' computers to be "monitored" (ECF No. 38 at 6) and states that "monitoring" Defendants' computers would pose no harm to Defendants. Plaintiff seeks extraordinary relief from this Court in the form of an order to place private individuals and a privately-owned company under surveillance because of her unsupported belief that TitleMax *might* replace their computers or attempt to destroy evidence as alleged (Pl. Mot. at 18). If Plaintiff genuinely finds this conduct does not constitute a harm to Defendants, then she should voluntarily offer to allow her computer to be "monitored" by Defendants.

### F. Plaintiff Has Not Shown a Temporary Restraining Order is in the Public Interest in This Case

The public interest considerations here weigh heavily in favor of Defendants. The public interest would be best served by preventing Plaintiff from draining judicial resources by filing such frivolous motions as the one presently at issue. Plaintiff's case is a single-plaintiff employment dispute, not a "civil rights for All Americans" case, as she purports. The public interest is not served by allowing the drastic emergency relief Plaintiff seeks on such baseless ground or by preventing the Defendants from contacting witnesses and potential witnesses in this case simply because Plaintiff wants to preclude such contact. Plaintiff proposes witness gamesmanship that should not be tolerated by this Court.

Plaintiff's claim that the public will be served by her lawsuit is belied by the fact that all of her causes of action seek redress for her own individual claim. None of her claims seek redress for claims related to the public at large. The public interest is also not served by giving credence to false and fabricated evidence. The 10 emails and multiple text messages Plaintiff presents as exhibits to support her Motion, containing false and defamatory statements. None of Plaintiff's self-serving, false and defamatory statements to public officials demonstrates a strong public interest in holding an emergency hearing or issuing a temporary restraining order in this matter.

### III.  CONCLUSION

Because Plaintiff fails to offer any evidence or law to support her request for such an extreme remedy, let alone meet her burden of persuasion as to each of the four prerequisites for a temporary restraining order. Accordingly, Plaintiff's request for an emergency hearing and ruling on her underlying TRO Request should be denied.

Dated this 6th day of September, 2022.

    Respectfully submitted,

    *s/ Timothy B. McConnell*
    Timothy B. McConnell
    (TN BPR No. 19136)
    Admitted *Pro Hac Vice*
    BASS, BERRY & SIMS PLC
    900 S. Gay Street, Suite 1700
    Knoxville, TN 37902
    Phone: (865) 521-2031
    Fax: (615) 742-6293
    timothy.mcconnell@bassberry.com

    Ginette Brown (TN BPR No. 31917)
    Admitted *Pro Hac Vice*
    BASS, BERRY & SIMS PLC
    150 Third Avenue, Suite 2800
    Nashville, TN 37201
    Phone:  (615) 742-7936
    Fax:  (615) 742-6293
    ginette.brown@bassberry.com

    Charles J. Bowen
    THE BOWEN LAW GROUP
    Georgia State Bar No. 071115
    7 East Congress Street, Suite 1001
    Savannah, GA 31401
    (912) 544-2050
    (912) 544-2070 (fax)
    cbowen@thebowenlawgroup.com

    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of September, 2022, I caused the above and foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR EMERGENCY HEARING OR RULING IN SUPPORT OF REQUEST FOR TEMPORARY RESTRAINING ORDER AND RELIEF** to be electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all parties/counsel of record.

                                                *s/ Timothy B. McConnell*
                                                Timothy B. McConnell

33663461.2